**FINSTERWALD–MAIDEN et al., Appellees,**

v.

**AAA SOUTH CENTRAL OHIO, Appellant.**

[Cite as *Finsterwald–Maiden v. AAA S. Cent. Ohio* (1996), 115 Ohio App.3d 442.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 95CA1706.

Decided Oct. 25, 1996.

*Robert W. Stewart,* for appellees.

*J.B. Yanity,* for appellant.

KLINE, Judge.

AAA South Central Ohio ("AAA") appeals from a judgment granted in favor of Susan Finsterwald–Maiden and Anita Weisenbach. The Athens County Municipal Court ordered AAA to compensate Finsterwald–Maiden and Weisenbach for unpaid bonuses, commissions, overtime pay, and vacation pay. On appeal, AAA contends that the AAA Employee Handbook releases AAA from any obligation to compensate Finsterwald–Maiden and Weisenbach for bonuses and commissions that were not due until after their termination. We disagree. We hold that AAA's employee handbook is not a legally binding contract, and we therefore affirm the judgment of the trial court.

Finsterwald–Maiden and Weisenbach were travel agents for AAA. After they were hired, AAA provided them with the AAA Employee Handbook, which stated as follows:

"[The handbook] is a ready source of information about policies and procedures and is not intended to be and should not be construed as a contract because all employment is employment-at-will. Unless a specific written contract is provided and executed, employment can be terminated at any time by the Club and or employee may quit at any time."

The handbook also stated that AAA reserved the right to eliminate or change benefits or policies as deemed necessary. Finsterwald–Maiden and Weisenbach signed certifications acknowledging that they knew that the handbook provided "only guidelines and not a contractual agreement with AAA South Central Ohio." Finsterwald–Maiden and Weisenbach also certified that they knew that their employment was at will and could be terminated at any time by AAA or themselves.

AAA fired Finsterwald–Maiden and Weisenbach when it learned that the women planned to establish a competing travel agency. Finsterwald–Maiden and Weisenbach testified that they were considering starting their own travel agency but had no concrete plans when AAA fired them. Finsterwald–Maiden and Weisenbach do not allege that they were wrongfully terminated; rather, they seek compensation for vacation time, "Fam" time (time earned for the purpose of allowing travel agents to familiarize themselves with travel destinations), commissions, finders' fees, and bonuses.

AAA denied that it owed Finsterwald–Maiden and Weisenbach any payments other than compensation for unused vacation time. Particularly relevant to this appeal is AAA's contention that Finsterwald–Maiden and Weisenbach were not entitled to payments for bonuses and compensation. AAA relied upon a provision of the employee handbook that stated as follows:

"Employees have opportunities to earn incentive commissions for sales of insurance, travel insurance, travel agency tours, and quarterly and annual bonuses. To receive commissions, the employee *must be employed on the date they are paid* or they will be forfeited." (Emphasis *sic.*)

Several witnesses testified that it was AAA's policy not to pay commissions and bonuses until after a client completed the travel tour because a cancellation would negate the commission or bonus.

The trial court found that Finsterwald–Maiden and Weisenbach earned commissions and bonuses prior to their termination and that these commissions and bonuses were not negated by cancellations. The trial court also found that the AAA Employee Handbook, including the provision concerning the payment of commissions and bonuses, is not a contract. The trial court therefore concluded that Finsterwald–Maiden and Weisenbach are entitled to the commissions and bonuses they earned before they were terminated. The trial court granted Finsterwald–Maiden $457.50 in vacation time, $54.12 in bonuses, $3,020 in commissions, and $7.50 in overtime, totaling $3,539.12. The trial court granted Weisenbach $726.95 in vacation time, $46.38 in bonuses, and $1,000 in commissions, totaling $1,773.33.

AAA asserts the following assignments of error:

"1. Employees at will may be terminated from or voluntarily leave employment at any time for any reason or no reason whatsoever.

"2. Employees at will are bound by the guidelines contained in a duly promulgated, adopted and noticed employee handbook."

AAA's assignments of error are akin to proposed statements of law. Pursuant to App.R. 12(A)(2), an appellate court is not obligated to review assignments of error if the appellant fails to identify the error on which the assignment of error is based. Nevertheless, our review of AAA's appellate brief reveals that AAA intends to assert that the trial court erred by failing to follow the guidelines contained in the employee handbook. We will therefore review the trial court's decision in light of this argument.

Most litigation concerning employee handbooks involves suits for wrongful termination in which an employee either tries to enforce or avoid the enforcement of a particular provision in the handbook. This case is unusual because it presents a factual situation in which the employee does not contest her termination and the *employer* wishes to enforce a particular provision of the employee handbook. Regardless, case law derived from wrongful termination lawsuits is instructive for the purpose of determining the legal effect of provisions in AAA's Employee Handbook.

■ Neither party disputes that Finsterwald–Maiden and Weisenbach were employees at will. Pursuant to this employment at will relationship, AAA could terminate Finsterwald–Maiden and Weisenbach at any time for any cause or no cause at all. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 67, 652 N.E.2d 653, 655–656. However, "at will" is only a description of the parties' *prima facie* employment relationship. *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d 1, 8, 15 OBR 22, 29–30, 472 N.E.2d 765, 772–773. That description intimates nothing about subsidiary contractual arrangements an employer may make by adding new terms and conditions to the relationship. If an employer makes a subsidiary contractual arrangement, the employer may be legally obligated to comply with it. *Id.* An employee handbook may create such a contractual arrangement. *Id.*

■ Ohio courts have held that employee handbooks are not in and of themselves contracts of employment. See, *e.g., Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 575, 653 N.E.2d 381, 384–385; *Cohen & Co., CPAs v. Messina, CPA* (1985), 24 Ohio App.3d 22, 24, 24 OBR 44, 46–47, 492 N.E.2d 867, 869–870. However, an employee handbook may provide the terms and conditions of an at-will employment relationship. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph two of the syllabus. Specifically, the provisions of an employee handbook may alter the terms of an at-will employment relationship if the employer and employee manifest an intention to be bound by the handbook provisions. *Sowards v. Norbar, Inc.* (1992), 78 Ohio App.3d 545, 549, 605 N.E.2d 468, 470–471; *Tohline v. Cent. Trust Co., N.A.* (1988), 48 Ohio App.3d 280, 282, 549 N.E.2d 1223, 1226–1227. Without such mutual assent to be bound by the handbook, the handbook is simply a unilateral statement of rules and policies that creates no obligation or rights. *Kiel v. Circuit Design Technology, Inc.* (1988), 55 Ohio App.3d 63, 66, 562 N.E.2d 517, 520–521; *Tohline v. Cent. Trust Co.,* 48 Ohio App.3d at 282, 549 N.E.2d at 1226–1227; *Cassidy v. U.S. Health Corp.* (Mar. 18, 1994), Scioto App. No. 2158, unreported, 1994 WL 88942, quoting *Tohline.* Consequently, our inquiry must focus on whether AAA, Finsterwald–Maiden, and Weisenbach intended that the employee handbook create a binding contract with respect to the payment of commissions and bonuses.

■ The determination of whether certain parties intended to create a binding contract is a question of fact properly resolved by the trier of fact. *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 106, 2 OBR 653, 656–657, 443 N.E.2d 161, 164–165. A reviewing court will not reverse a trial court's finding if there exists competent, credible evidence supporting that finding. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. An appellate court must not reweigh

the evidence or substitute its judgment for that of the trial court, because the trial court is in the best position to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d at 80, 10 OBR at 410–411, 461 N.E.2d at 1276.

 In this case, the AAA Employee Handbook expressly states that it is not a contract. Instead, it purports to be a "source of information about policies and procedures" that are "only guidelines." In situations where an employee handbook disclaims any intent to create a contractual relationship, courts have found no mutual assent by the parties to be bound by the handbook's provisions. See, *e.g., Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 141, 555 N.E.2d 280, 282–283; *Kiel v. Circuit Design Technology, Inc.,* 55 Ohio App.3d at 66, 562 N.E.2d at 520–521; *Tohline v. Cent. Trust Co., N.A.,* 48 Ohio App.3d at 283, 549 N.E.2d at 1227–1228; *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 272, 549 N.E.2d 1210, 1216–1217; cf. *Helle v. Landmark, Inc.* (1984), 15 Ohio App.3d at 10, 15 OBR at 31–32, 472 N.E.2d at 774–775 (disclaimers were negated by oral assurances of severance pay). Accordingly, the disclaimer alone constitutes competent, credible evidence to support a finding of no mutual assent to form a contract.

Additional evidence supports the trial court's finding. For example, the handbook states that AAA may change its policies and procedures as it deems necessary. Courts have considered provisions permitting the employer to unilaterally alter the handbook at any time as an indication of a lack of mutual assent. See *Karnes v. Doctors Hosp.,* 51 Ohio St.3d at 141, 555 N.E.2d at 282–283; *Cassidy v. U.S. Health Corp.* (Mar. 18, 1994), Scioto App. No. 2158, unreported, 1994 WL 88942. Furthermore, there is no evidence that AAA negotiated with Finsterwald–Maiden or Weisenbach concerning the content of the handbook's provisions, which is another factor courts have considered in determinations of contractual intent. See *id.* Because the provision of the AAA Employee Handbook concerning commissions and bonuses is not contractual, the trial court was not obligated to enforce it.

We note that additional authority supports the trial court's judgment on other grounds. Ohio courts have ordered the payment of commissions and bonuses when an employee completed the services for which he or she would have been compensated had the employer not terminated the employee before the commissions or bonuses were due. See *Ohio Marble Co. v. Byrd* (C.A.6, 1933), 65 F.2d 98, 101; *McKelvey v. Spitzer Motor Ctr., Inc.* (1988), 46 Ohio App.3d 75, 77–78, 545 N.E.2d 1311, 1313–1314; *Montgomery Ward & Co. v. Smith* (App. 1931), 12 Ohio Law Abs. 28, 30; *Turnipseed v. Bowness* (1929), 7 Ohio Law Abs. 310; *Elbinger Shoe Mfg. Co. v. Patrick* (1921), 14 Ohio App. 456, 459. In this case, the

trial court found that Finsterwald–Maiden and Weisenbach earned bonuses and commissions that AAA did not pay them. Finsterwald–Maiden and Weisenbach testified that they completed all of the work necessary to earn their commissions and bonuses before they left AAA and that the commissions and bonuses were not negated by client cancellations. AAA presented no evidence to refute this testimony. In fact, trial exhibits obtained from AAA indicated amounts due to Finsterwald–Maiden and Weisenbach that AAA did not pay. We also note that forfeiture is not favored in the law, and courts strictly construe contractual provisions authorizing the forfeiture of important rights almost earned by the rendering of substantial service. *Lemmon v. Cedar Point, Inc.* (C.A.6, 1969), 406 F.2d 94, 97; *McKelvey v. Spitzer Motor Ctr., Inc.*, 46 Ohio App.3d at 77, 545 N.E.2d at 1313–1314.

AAA cites *Ullmann v. May* (1947), 147 Ohio St. 468, 72 N.E.2d 63, and *Fate–Root–Heath Co. v. Ceramic Machinery Co.* (1936), 56 Ohio App. 448, 9 O.O. 462, 11 N.E.2d 91 in support of its argument against the payment of commissions and bonuses. In these cases, employment contracts provided for the payment of commissions. The courts denied employees their commissions based upon the express language of the contracts. *Ullmann v. May*, 147 Ohio St. at 475, 34 O.O. at 387, 72 N.E.2d at 66; *Fate–Root–Heath Co. v. Ceramic Machinery Co.*, 56 Ohio App. at 450, 9 O.O. at 463, 11 N.E.2d at 92–93. In this case, AAA concedes that no employment contract exists to be enforced. *Ullmann* and *Fate–Root–Heath Co.* are therefore distinguishable.

In conclusion, competent, credible evidence supports the trial court's finding that the AAA Employee Handbook was not a binding contract. Accordingly, the trial court did not err by refusing to enforce the provision concerning commissions and bonuses. For all of the foregoing reasons, we overrule AAA's assignments of error and affirm the trial court's judgment.

*Judgment affirmed.*

HARSHA and STEPHENSON, JJ., concur.