**SEIDLER, Appellee,**

v.

**FKM ADVERTISING, COMPANY, INC. et al., Appellants.**

[Cite as *Seidler v. FKM Advertising Co.* (2001), 145 Ohio App.3d 688.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 99–CA–122.

Decided Sept. 21, 2001.

*Pfau, Pfau & Marando* and *Michael P. Marando*, for appellee.

*Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A., Christopher J. Newman* and *Richard N. Selby*, for appellants.

---

WAITE, Judge.

This timely appeal arises from an April 23, 1999 judgment entry of the Mahoning County Court of Common Pleas adopting a magistrate's decision that granted appellee commissions on advertising contracts he had procured for FKM Advertising Co., Inc. et al. ("FKM") while he was employed by them. Appellants argue that the commissions awarded to appellee were future commissions and, thus, were not contemplated as part of appellee's oral employment agreement. In so doing, appellants misconstrue the case law involving future commissions. For the following reasons, we affirm the decision of the trial court.

In 1993, Jan Seidler ("appellee") sold billboard advertising for Naegle Outdoor Advertising Company ("Naegle"). The advertising was sold for a specific period of one or more months, usually up to one year. The customers were billed for the advertising on a monthly basis. Appellee was paid a commission on the sales after the customers paid their bills.

Appellee had no written contract with Naegle. At some point during his employment with Naegle, he signed an acknowledgment that if his employment was terminated, he would not be paid commissions on sales completed prior to termination but which were not yet paid for by the customer. Despite the terms of the acknowledgment letter, appellee understood that his commissions were based on procuring contracts and the actual payment of those contracts by the clients.

In November 1995, Naegle sold its assets to FKM. Naegle terminated appellee's employment on November 15, 1995. FKM hired him on the next day at the same salary and commission rate as he had earned with Naegle, again as an at-will employee with no written contract. FKM also had a policy of not paying post-termination commissions. While appellee may have been aware of this policy, he did not sign any agreement with FKM to that effect.

In January 1996, FKM terminated appellee's employment.

On May 12, 1997, appellee filed a complaint in the Mahoning County Court of Common Pleas seeking commissions for advertising contracts he sold while still employed by FKM but which had not been paid until after his termination. His complaint was based on theories of breach of contract, quantum meruit, and unjust enrichment. He sought commissions only for the specific contractual period he had directly procured and not for future commissions on renewals of those contracts.

The parties stipulated that after FKM terminated Seidler, its corporate stock was purchased by Lamar Advertising of Youngstown, Inc. ("Lamar"), who is the proper party defendant in this case. The parties further stipulated that if appellee is entitled to judgment, it would be in the amount of $14,672.84.

The matter was submitted to arbitration on August 4, 1998, which ruled in favor of Lamar. Appellee appealed the decision, and the matter was tried before a magistrate on February 26, 1999.

On March 3, 1999, the magistrate ruled in favor of appellee. The magistrate held that an at-will employee is entitled to payment for bonuses and commissions on work completed prior to termination if that work would have been compensated had the employee remained employed, citing *Finsterwald–Maiden v. AAA S. Cent. Ohio* (1996), 115 Ohio App.3d 442, 685 N.E.2d 786.

After seeking an extension of time, appellants filed objections to the magistrate's decision.

On April 23, 1999, the court of common pleas filed a entry overruling appellants' objections and adopting the magistrate's decision in full, awarding appellee $14,672.84. Appellants filed a timely appeal.

Appellants present one assignment of error, which asserts:

"The trial court erred as a matter of law when it determined that plaintiff-appellee Jan J. Seidler was entitled to post-termination commissions."

Appellants' sole argument is that, notwithstanding the *Finsterwald–Maiden* case relied on by the trial court, employers are not responsible for post-termination commissions unless expressly provided for in an employment contract. Appellants' alleged error arises from an order of the trial court adopting the decision of the magistrate pursuant to Civ.R. 53(E). This court will not overturn the trial court's decision to adopt the magistrate's recommendation except upon a finding of an abuse of discretion by the trial court. *Baire v. Baire* (1995), 102 Ohio App.3d 50, 53, 656 N.E.2d 984; *Sheet Metal Workers Local No. 33 Apprenticeship & Training Commt. v. Vance* (Sept. 30, 1999), Mahoning App. No. 97–CA–125, unreported, 1999 WL 803437. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is

unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

Appellants rely primarily on *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 661 N.E.2d 796, which held that "[i]n the absence of some manifestation of assent by the employer, or some evidence of industry custom or specific company policy establishing a claim of entitlement, an at-will employee had not right to receive commissions after his employment was terminated." *Id.* at paragraph two of syllabus.

The facts of that case reflect that Weiper was an at-will employee of an employment agency. The oral contract provided for payment of commissions based on whether the employment candidate or hiring company were part of Weiper's client list. After Weiper was terminated, he filed a complaint seeking *perpetual* commissions for all fees generated in any way from his client list. *Id.* at 255, 258, 661 N.E.2d 796.

The *Weiper* court looked at two factors in determining when the right to a commission vests, absent an express provision in the employment contract: (1) industry custom and (2) the employee's efforts. *Id.* at 259, 661 N.E.2d 796. *Weiper* found that the custom of the industry was not to pay post-termination commissions. *Id.* The court also found that Weiper's efforts "were essentially complete at the time of placement" and should not be rewarded in perpetuity. *Id.*

There is nothing in *Weiper* that contradicts appellee's claim for commissions on contracts he completed while still employed by FKM. *Weiper* was concerned with *future commissions in perpetuity* for income generated without any additional effort on the part of Weiper, who was terminated. In the instant case, appellee has requested and has been awarded commissions only on the finalized contracts he specifically procured. The record also reveals that those specific contracts have been paid by the clients. Appellee has not been awarded the right to future commissions when and if those contracts are renewed.

Appellee argues that his situation is more akin to that found in *McKelvey v. Spitzer Motor Ctr., Inc.* (1988), 46 Ohio App.3d 75, 545 N.E.2d 1311, which held:

"It is inequitable to forfeit an employee's share of an employee bonus plan where he had completed his services for the year and the bonus plan has a net profit, notwithstanding the fact [that] he left his employment before the completion of audit procedures when his share was made payable by the employer." *Id* at syllabus.

The bonus plan in *McKelvey* specifically stated that the employee must be employed at the time of the completion of the audit or else the bonus would be

forfeited. The court held that, notwithstanding the forfeiture provision, the employee was entitled to the bonus. *Id.* at 77, 545 N.E.2d 1311.

■ Appellee's argument is persuasive. Appellee completed the work for procuring the advertising contracts at issue. Appellants should not be permitted to avoid paying the agreed-upon commissions for the specific contracts procured merely because of their own collection and accounting procedures. This is particularly true in light of appellants' policy of refusing to pay *any* salesman a commission on a terminated salesman's contracts until those contracts are actually renewed by another salesman. Appellants receive a windfall every time they terminate an employee because they do not pay commissions on the contracts previously controlled by that employee until those contracts come up for renewal months or even years later. If we were to accept appellants' argument, we would be endorsing a policy whereby employers could hire employees through promises of commissions and then fire them as soon as possible after the contracts are entered into to avoid paying those commissions.

Beyond this policy, it can be seen that the cases cited by appellants do not bolster their argument. Appellants cite *Kovacic v. All States Freight Sys.* (Aug. 15, 1996), Cuyahoga App. No. 69926, unreported, 1996 WL 465349, even though it actually appears to support appellee's claim for commissions earned but yet not paid prior to termination. The *Kovacic* opinion assumes that the employee should have been awarded commissions for work done while still employed. *Id.* at 6. A new trial was granted the employer to determine the value of the terminated employee's unpaid but vested commissions due to an excessive jury award for projected commissions extending five years into the future. *Id.* Once again, the issue of perpetual or long-term future commissions is not being raised in the instant case.

Appellants cite *Internatl. Total Serv., Inc. v. Glubiak* (Feb. 12, 1998), Cuyahoga App. No. 71927, unreported, 1998 WL 57123, which further supports appellee's position. *International Total Services, Inc.* held that the employee had a right to commissions on all contracts he had sold during his employment. *Id.* at 3. The Eighth District Court of Appeals upheld the trial court finding that, even though no written employment agreement existed between the parties, the employee was entitled to commissions earned on sales that were completed by him prior to the employee's leaving the company. *Id.* at 8. Because of the unique facts of the case, though, the employee could not prove that a sale was actually complete prior to the time the client paid its bill.

A crucial fact in *International Total Services, Inc.* was that the sales contracts procured by the employee were revocable. *Id.* at 6.

"The contract provides that either party can terminate the contract without financial penalty upon 30–day notice. * * * [The employee] agreed that [the employer's] contracts were 'up for grabs' and that when revenue stops, his commission stops. Thus, although the employee was instrumental in procuring those sales, income from those sales could only be *anticipated* at the time the employee terminated his employment." (Citations omitted; emphasis in original.) *Id.* at 6–7.

Because the sales contracts were revocable, the employee's right to collect a commission on those contracts did not vest until the client effectively renewed the contract by paying its monthly bill. *Id.* The parties agreed that the commissions were contingent upon the clients' paying their bills, as well as the employee's remaining employed, during each thirty-day renewal period. *Id.* Therefore, the employee was limited to damages for commissions earned up to his last day of employment based on clients who had paid their bills. *Id.*

The situation in the case at bar is quite different. Appellee's commission was based on the fact that he had procured the contract. Once a contract for a specific period had been entered into, his right to commissions during the period vested, even though he was actually paid these commissions out of the client's later payment on its account. Appellants did not present any evidence to rebut appellee's contention.

Appellants presented considerable evidence that the commissions were distributed only after the client actually paid its monthly bill. Appellants did not provide any evidence that the clients' method of paying their bills signified that the contracts were revocable. It is reasonable to conclude from appellee's testimony that the contracts were irrevocable. Therefore, it was possible for the trial court to conclude that appellee's claim for earned commissions was based on his vested interest in the contracts at the time they were procured and on the duration of the irrevocable portion of the contract.

Appellant also cites *Kosta v. Ohio Outdoor Advertising Corp.* (Dec. 11, 1992), Ashtabula App. No. 92–A–1704, unreported, 1992 WL 367027, involving a claim for commissions earned by a salesman of outdoor advertising space, which is very similar to the case *sub judice.* A significant difference, though, is that the employee in *Kosta* argued that he was entitled to *all commissions* generated by the contracts that were entered into while he was employed. *Id* at 2. Evidence was submitted revealing that the employee received his initial compensation based on contracts made by his predecessors. This fact was crucial in the court's determination that the employee was not entitled to post-termination compensation. *Id.* at 3.

In the case at bar, appellants have not claimed that appellee ever received unearned commissions derived from the efforts of previous salesmen. As we

have already pointed out, the evidence reveals that appellants' salesmen received commissions only after they had procured a new or renewal contract. On this basis, we distinguish the facts of *Kosta* and find them inapposite to the case under review.

Appellants argue that *Finsterwald–Maiden,* relied upon by the trial court, is distinguishable from the case at bar. They argue that *Finsterwald–Maiden* involved a travel agency where commissions were paid on a per-transaction basis in which there were no followup responsibilities required by the employee. Appellants argue that testimony was presented that their contracts involved followup duties and that the trial court awarded appellee commissions, at least in part, for work he did not perform.

Whether the trial court believed appellants' evidence is a matter of credibility which is primarily determined by the trier of fact. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. The March 3, 1999 magistrate's decision found that the more credible evidence indicated that appellants' salesmen had little or no followup duties after the sales contract was signed. The record contains competent and credible evidence to support the trial court's findings, and we must defer to those findings. *Id.; Myers v. Garson* (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742. Therefore, we find no reason to distinguish *Finsterwald–Maiden,* and we find its holding applicable to the case at bar.

*Finsterwald–Maiden* held:

"Ohio courts have ordered the payment of commissions and bonuses when an employee completed the services for which he or she would have been compensated had the employer not terminated the employee before the commissions or bonuses were due. See *Ohio Marble Co. v. Byrd* (C.A.6, 1933), 65 F.2d 98, 101; *McKelvey v. Spitzer Motor Ctr., Inc.* (1988), 46 Ohio App.3d 75, 77–78, 545 N.E.2d 1311, 1313–1314; *Montgomery Ward Co. v. Smith* (App.1931), 12 Ohio Law Abs. 28, 30 [1931 WL 2739]; *Turnipseed v. Bowness* (1929), 7 Ohio Law Abs. 310 [1929 WL 2120]; *Elbinger Shoe Mfg. Co. v. Patrick* (1921), 14 Ohio App. 456, 459 [1921 WL 1309]." *Finsterwald–Maiden,* 115 Ohio App.3d at 447, 685 N.E.2d 786.

In *Finsterwald–Maiden,* the court was troubled that the employer was attempting to enforce a forfeiture upon the employees based upon the date of an annual audit, a date over which the employees had no control. *Id.* at 448, 685 N.E.2d 786. "[F]orfeiture is not favored in the law, and courts strictly construe contractual provisions authorizing the forfeiture of important rights almost earned by the rendering of substantial service." *Id.* Similarly, appellants are attempting to enforce a forfeiture of appellee's commissions based upon the dates that their clients paid their bills. As in *Finsterwald–Maiden,* appellee had no

control over these dates. Also, as in *Finsterwald–Maiden*, there was no written contract between appellee and appellants containing a forfeiture provision, and the parties dispute whether their at-will oral employment agreement included the possibility of forfeiture. We agree with *Finsterwald–Maiden* that an employee does not forfeit earned and vested commissions merely because his employment had been terminated before a fortuitous event or date had passed.

The holding in *Finsterwald–Maiden* is not in conflict with appellants' primary contention that a terminated employee is not automatically entitled to perpetual future commissions. Commissions based on procuring irrevocable contracts for a specific period are not future commissions, regardless of the accounting, collection, or payment procedures of the employer.

The parties have already stipulated that, if appellee is legally entitled to some award for commissions earned prior to termination, the amount of appellee's award should be $14,672.84. There being no dispute as to the amount, as stated in the April 23, 1999 judgment entry, the decision of the trial court is affirmed in full.

*Judgment affirmed.*

VUKOVICH, P.J., concurs.

DEGENARO, J., dissents.

DEGENARO, Judge, dissenting.

I must respectfully dissent from the majority's opinion. The majority has misconstrued *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 661 N.E.2d 796. Properly applying the *Weiper* analysis requires reversal of the trial court's decision.

The fundamental question before this court is why, among all the people employed to sell billboard space, this plaintiff is entitled to receive post-employment commissions when the industry custom is not to pay these commissions. In order to answer this question, this court must be guided by two competing interests, the equitable considerations involving this particular employee and the public policy principle that courts should not second-guess business decisions. The majority has addressed the equitable issue in this case without any consideration of the public policy issue.

In order for a court to determine when the right to a post-employment commission vests absent some form of mutual assent, a court must consider *both* the employee's efforts *and* industry custom. *Weiper v. W.A. Hill & Assoc., supra,* at 259, 661 N.E.2d 796. The reason a court applies this method of

analysis is that "[s]imply because a commissioned employee through his or her efforts makes a company more profitable does not entitle that person to post-employment commissions." *Id.*

The majority seems to be saying otherwise when it states that "[a]ppellants receive a windfall every time they terminate an employee because they do not pay commissions on the contracts previously controlled by that employee until those contracts come up for renewal months or even years later." This court should let the free market address this concern. If appellants hire and fire salespeople in order to receive that windfall, then no one will want to work for appellants and the market will prevail, thereby motivating appellants to change their policy. Courts should not place themselves "in the untenable position of having to second-guess the business judgments of employers." *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 103, 483 N.E.2d 150. Because of this public policy principle, this court should look to more than just equitable considerations and apply the *Weiper* analysis in this case.

The majority attempts to distinguish *Weiper* by juxtaposing the type of commission denied the plaintiff in *Weiper* against the type of commission sought in this case. Although the plaintiff in *Weiper* was seeking commissions in perpetuity—and this may have contributed to the court's decision—it is not the sole reason to use the analysis in the first place. This distinction with regard to the duration of the post-employment commissions sought merely reinforced the point in *Weiper* that the employee's efforts while still an employee were not sufficient to justify giving him commissions beyond his termination in contravention of industry custom.

Instead of using *Weiper*'s two-pronged analysis, the majority relies on two cases, *Finsterwald–Maiden v. AAA S. Cent. Ohio* (1996), 115 Ohio App.3d 442, 685 N.E.2d 786, and *McKelvey v. Spitzer Motor Ctr., Inc.* (1988), 46 Ohio App.3d 75, 545 N.E.2d 1311, which solely addresses employee efforts. Both of these opinions are silent as to whether industry custom was a factor in those decisions. *Weiper* calls for courts to consider both the employee's efforts *as well as industry custom.* In the case *sub judice,* the uncontroverted evidence is that the industry standard is *not* to pay post-employment commissions. Both the magistrate and the majority disregard this evidence. It is for this reason that both *Finsterwald–Maiden* and *McKelvey* are distinguishable from this case.

With regard to employee efforts, as the majority points out, the magistrate's decision found that appellants' salesmen had little or no followup duties after the sales contract was signed, despite evidence to the contrary. Although this judge would have come to a different conclusion as to that fact alone, it cannot be said that that particular finding is against the manifest weight of the evidence. The majority's argument regarding credibility gives this writer pause, as weighing the

credibility of the witnesses is the role of the trier of fact. *State v. Dye* (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763. Appellate judges must show restraint when tempted to overturn a finding made by the trier of fact. In this case, however, the magistrate's finding that appellee had little or no duties after the sale is not dispositive in and of itself.

As illustrated by *Weiper*, when considering an employee's efforts, a court must look to more than simply what the employee has done, and examine all of the circumstances surrounding the employment situation. In this case, appellee worked for appellants for only six weeks. Prior to this he had been working for appellants' predecessor, Naegle, with whom he had signed an acknowledgment he would not receive post-employment commissions. Most of the commissions appellee seeks to recover in this case arise from contracts sold while working for Naegle.

Keeping in mind the public policy stated in *Mers* that Ohio courts should not be placed in the untenable position of second-guessing the business decisions of employers, I conclude that, based on these additional facts, which were not considered by the majority and the magistrate, when combined with the magistrate's finding that appellee had little or no followup duties and the industry custom not to pay post-employment commissions, the trial court incorrectly awarded the post-employment commissions.

For the foregoing reasons, I would find appellants' assignment of error to be meritorious and reverse the judgment of the trial court.