[Cite as *Stschiak v. Certified Logistics*, 2016-Ohio-897.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| JOHN STASCHIAK, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | CASE NO. 2015-T-0055 |
| CERTIFIED LOGISTICS, INC., et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CV 00385.

Judgment: Reversed and remanded.

*Stephen A. Turner,* Turner, May & Shepherd, 185 High Street, N.E., Warren, OH 44481 (For Plaintiff-Appellant).

*Shirley J. Smith,* 1399 East Western Reserve Road, #2, Poland, OH 44514 (For Defendants-Appellees).

DIANE V. GRENDELL, J.

{¶1}     Plaintiff-appellant, John Staschiak, appeals from the Judgment Entry of the Trumbull County Court of Common Pleas, granting the defendants-appellees, Certified Logistics, Inc.'s and Checkered Express, Inc.'s, Motions for Summary Judgment and dismissing Staschiak's Complaint. The issue to be determined by this court is whether an employee handbook can create a contract as to certain terms of employment, including the employee's rate of pay. For the following reasons, we

reverse the judgment of the lower court and remand for further proceedings consistent with this opinion.

{¶2} On February 21, 2012, Staschiak filed a Complaint against Certified Logistics and Checkered Express, his former employers. Staschiak filed an Amended Complaint on February 26, 2013.

{¶3} The Amended Complaint explained that Staschiak had worked as a commercial truck driver for Checkered Express from May 2003 to 2009. From 2009 to April 2011, he was employed in the same capacity with Certified Logistics.[1] He asserted that his employment with both entities was governed by an employee handbook that he had been issued by Checkered Express. According to Staschiak, pursuant to that handbook, after 5 years of service, he was to be paid 30 percent of the gross income received by the appellees for loads he drove and $15 per hour for detention and layover pay. He was also entitled, after 90 days of service, to have the appellees cover 70 percent of his health insurance. Attached to the Amended Complaint was a copy of the "Checkered Express Inc. Employee Handbook."

{¶4} Counts One and Two raised separate claims for Breach of Contract against Checkered Express and Certified Logistics, asserting that Staschiak was not paid in accordance with the 30 percent of load policy stated in the handbook. Counts Three and Four raised claims for Fraud relating to false statements and representations, "understating the gross income to be received for loads." The Breach of Contract claims in Counts Five through Eight related to the failure to compensate Staschiak for

---

1. In a subsequently filed affidavit, Staschiak explained that he began receiving paychecks from Certified Logistics in 2009 and "was advised that this entity was now his employer."

detention, layovers, and other time, and for 70 percent of his health insurance, again pursuant to the employee handbook.

{¶5} Both appellees filed Motions to Dismiss Plaintiff's Amended Complaint on May 2, 2013, arguing that the handbook did not constitute an employment contract and the Fraud claims were not pled with particularity. Staschiak filed a Memorandum in Opposition on June 13, 2013. The Motions to Dismiss were denied on June 21, 2013.

{¶6} On September 13, 2013, the appellees filed Answers and Counterclaims.

{¶7} The appellees filed separate Motions for Summary Judgment on February 6, 2015. They argued, inter alia, that there was no written contract, Staschiak was an at-will employee, and the handbook did not constitute an employment contract. Certified Logistics also noted that the handbook was issued and written solely by Checkered Express. Attached to the Motions were copies of the affidavit of Csaba Budjoso, the owner of Certified Logistics, who averred that there was never a contract or employment agreement between the company and Staschiak and the company made no false representations to him.

{¶8} Staschiak filed a Memorandum in Opposition on February 20, 2015. He argued that the employee handbook created a contract since it contained clear promissory language about what the company "will" do. He claimed that the appellees made false representations about the amounts paid by shippers for the loads that he hauled. Attached was Staschiak's affidavit, in which he averred that he received the handbook in connection with his employment with Checkered Express, continued to work for that company after receiving the handbook, and that, after he became an employee of Certified Logistics, he continued to drive trucks with Checkered's "mark"

3

and "was still required to obey" the Checkered handbook. The appellees each filed a Memorandum in Response on March 6, 2015.

{¶9} The lower court issued a Judgment Entry on April 27, 2015, granting the appellees' Motions for Summary Judgment and dismissing all of Staschiak's claims. The court found that Staschiak failed to establish there was a "meeting of the minds" sufficient to make the handbook a contract, and thus, could not prove his Breach of Contract claims. The Fraud claims were dismissed on the ground that the alleged damages were not separate from those attributed to the breach.

{¶10} After Staschiak appealed to this court, on July 27, 2015, the appellees filed Objections/Proposed Amended Statement of Evidence and Proceedings Pursuant to App.R. 9(C). Staschiak filed a Proposed Statement of the Proceedings on July 28, 2015.

{¶11} Following a motion to extend the time for transmission of the record in this court, we remanded for the trial court to settle/approve the App.R. 9(C) statement. The trial court filed a Judgment Entry on August 3, 2015, finding that such a statement was unnecessary, since no evidence was taken at the hearing on the Motion for Summary Judgment.

{¶12} On appeal, Staschiak raises the following assignments of error.

{¶13} "[1.] The trial court erred in granting summary judgment to the appellees based upon arguments not raised in appellees' initial motions.

{¶14} "[2.] The trial court[] erred when it ruled that the appellees were not contractually obligated to honor the compensation provisions of the employee handbook."

**{¶15}** Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

**{¶16}** A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶ 27.

**{¶17}** In his first assignment of error, Staschiak contends that the lower court was not permitted to grant summary judgment based on new arguments raised by the appellees to which he was not permitted to reply.

**{¶18}** Staschiak takes issue with the fact that the appellees raised, in their responses to his Memorandum in Opposition to summary judgment, issues relating to the lack of Civ.R. 56 evidence presented, and that his reliance on the employee handbook was unreasonable. The appellees' contentions appear to merely have been responses to arguments raised in Staschiak's Memorandum in Opposition. Further, Staschiak failed to raise this issue before the lower court through a motion to strike and,

5

thus, should not be permitted to raise it on appeal.[2]  *Lawson v. Mahoning Cty. Mental Health Bd.*, 7th Dist. Mahoning No. 10 MA 23, 2010-Ohio-6389, ¶ 51 ("in the context of summary judgment[,] * * * if a reply raises new arguments and the non-moving party fails to file a motion to strike, the non-moving party is precluded from arguing on appeal that it was 'ambushed' by the new argument").  Regardless, these issues are not dispositive of the appeal, as will be discussed in the remainder of the opinion.

{¶19}  The first assignment of error is without merit.

{¶20}  In his second assignment of error, Staschiak argues that the provisions of the employee handbook created a binding contract because they contained promissory language which he accepted by continuing to work after receiving the handbook.  As such, he should have been permitted to prove his Breach of Contract claim at trial.

{¶21}  The appellees contend that the handbook contained "guidelines" and was not intended to form a contract.

{¶22}  This court has held that "[a]n employer's promulgation of employment manuals, employee handbooks or other written guidelines elucidating policies or practices may be evidence of the existence of subsidiary agreements internal to the employment relationship."  *White v. Fabiniak*, 11th Dist. Lake No. 2007-L-100, 2008-Ohio-2120, ¶ 17. Employment manuals may constitute binding contracts between employees and employers provided all necessary elements of an implied contract are present.  *Jones v. Conneaut City Health Dept.*, 190 Ohio App.3d 28, 2010-Ohio-4560, 940 N.E.2d 629, ¶ 27 (11th Dist.).  While principles of implied contract law are often utilized in wrongful discharge claims, they are also applied in other circumstances.  For

---

2.  Although Staschiak states in his brief that he was not served with the appellees' responses, they contain certifications that they were mailed to his counsel.

6

example, *Jones*, which dealt with a dispute over pay for unused vacation hours, applies the implied contract principles discussed in this opinion. *See also Finsterwald-Maiden v. AAA S. Cent. Ohio*, 115 Ohio App.3d 442, 445-446, 685 N.E.2d 786 (4th Dist.1996) (noting that wrongful termination principles are "instructive" in cases involving employment handbooks and considering whether a subsidiary, binding contract was created, in addition to the existing at-will employment, in order for a plaintiff to recover payment of commissions and bonuses).

**{¶23}** "[A]n employee who asserts the existence of an implied contract must prove the existence of each element necessary for the formation * * * of a contract, including, offer, acceptance, consideration, and mutual assent." (Citations omitted.) *White* at ¶ 17.

**{¶24}** In the present case, there was at least an issue of material fact as to whether the necessary elements existed to establish a contract resulting from the handbook. Importantly, the handbook, which explicitly stated the compensation policy, was, according to Staschiak's affidavit, given to him and he remained an employee after receiving it. Several Ohio appellate districts have found "continued employment under an employment handbook to constitute adequate consideration to support an implied contract of employment," and that continued work constitutes acceptance. *Whistler v. W. Reserve Care Servs.*, 7th Dist. Mahoning No. 00 C.A. 90, 2001 Ohio App. LEXIS 5811, 10 (Dec. 24, 2001); *Galgoczy v. Chagrin Falls Auto Parts, Inc.*, 8th Dist. Cuyahoga No. 94281, 2010-Ohio-4684, 2010 Ohio App. LEXIS 3991, 3 (Sept. 30, 2010). *See also Long Bus. Sys., Inc. v. Bable*, 11th Dist. Lake No. 2001-L-058, 2002-Ohio-1963, 2002 Ohio App. LEXIS 1903, 5-6 (Apr. 19, 2002) (continued employment

can be "consideration for changes to the terms and conditions under which the employee is employed").

{¶25} In addition to Staschiak's intent to assent to the handbook as a contract, the handbook can also be construed as an offer that was made by Checkered Express. This conclusion is supported by a similar holding in *Bolling v. Clevepak Corp.*, 20 Ohio App.3d 113, 484 N.E.2d 1367 (6th Dist.1984). In *Bolling*, at issue was an employee manual, which contained various policies, procedures, and a description of benefits and payment. Contested was a severance provision, which stated the length of severance pay to be made in certain situations. The court there held that "a reasonable person in appellant['s] position, upon receiving this manual and reading these severance provisions, would be justified 'in believing that "a commitment [had] been made."'" (Citations omitted.) *Id.* at 118-119. It specifically noted that the language in the provisions was "clear and definite, evincing an intent to furnish severance pay when the employees fulfilled the conditions stated therein." *Id.* at 119. Finally, it found significant "the fact that the severance provisions carried no * * * explicit 'disclaimer' to indicate that [the employer] did not intend to be bound by any language employed in those provisions" and rejected the claim that the handbook merely provided "guidelines." *Id.*

{¶26} Similarly, in the present case, the language of the handbook is clear as to the payments at issue. The "Employee Pay and Compensation" pages state the percentage increases relating to pay, and that the "percentage increase will be given on anniversary date of hire." It then stated, pertinent to this case: "30% 5 years of service." As to insurance it included the following provision: "Health, life, and dental insurance plans are available for the driver after 90 days of employment [and] Checkered Express

8

Inc. will cover 70% of the costs of the driver." Finally, it includes: "Hourly rates are for detention and pay that is not covered in the percentage load pay. Rates are as follows: * * * 5 years to 10 years of service $15.00 an hour." Each of these statements plainly lays out the benefits that were to be received and that "will" be given to the employee. While a cover letter contained within the handbook states that it includes "guidelines," it does not otherwise claim that the handbook cannot constitute a contract or counteract the clear language offering these benefits to Staschiak.

**{¶27}** This type of case may also be compared to situations regarding vacation pay policies included in an employee handbook, since the benefit to be received is clearly stated. *See Majecic v. Universal Dev. Mgmt. Corp.*, 11th Dist. Trumbull No. 2010-T-0119, 2011-Ohio-3752, ¶ 22 ("Ohio courts have enforced company policies regarding payment -- or nonpayment -- of personal or vacation time upon termination of employment where such policies are clear and published in an employee handbook") (citation omitted); *Winters-Jones v. Fifth Third Bank*, 8th Dist. Cuyahoga No. 75582, 1999 Ohio App. LEXIS 2410, 3 (May 27, 1999) (it was clear the employee intended to accept the offer of vacation time given her claim that she was entitled to such a benefit).

**{¶28}** We recognize that there is case law rejecting an employee handbook as a contract, with several such cases cited by the appellees. In each of these cases, however, there was specific language within the handbook claiming that the handbook was not a contract, and clearly showing no intent to be bound by it. For example, in *Smiddy v. Kinko's, Inc.*, 1st Dist. Hamilton No. C-020222, 2003-Ohio-446, while there was a dispute about whether the discipline procedure altered the at-will nature of the employment relationship, the handbook specifically made a statement that it did not.

*Id.* at ¶ 21. In *Finsterwald-Maiden*, 115 Ohio App.3d 442, 685 N.E.2d 786, also cited by appellees, the handbook states that it was not a contract, and also contained a provision allowing it to be unilaterally altered. *Id.* at 447 ("[c]ourts have considered provisions permitting the employer to unilaterally alter the handbook at any time as an indication of a lack of mutual assent").

{¶29} In the present case, there is no language within the handbook either claiming that it could be changed at the employer's discretion or that it did not form a contract. As noted above, the circumstances of the present case are more similar to *Bolling* than those cited by the appellees. Given the clarity of these provisions and the lack of any disclaimer, the motion for summary judgment, as in *Bolling*, should have been denied as to the claim that a contract did not exist.[3]

{¶30} The appellees argue that Staschiak's acceptance of allegedly inadequate payment for a period of time brings into question his intent to assent to the terms in the employee handbook, although they present little argumentation as to this point. Even if this could be the case, this is an issue of factual dispute to be determined at trial. This is especially true in the case of the 30 percent payment claim, where Staschiak alleged that the appellees misstated the value of loads in order to pay less, which was not discovered by him initially. Similarly, it appears from Checkered Express' Motion for Summary Judgment that it paid Staschiak's "Medicare premium * * * without any obligation to do so," which evidences possible issues arising prior to the filing of this

---

3. Appellees assert that the 30 percent provision was not entirely clear because it does not indicate what the 30 percent references. However, Staschiak sets forth precisely what he understood this to mean (that he was to receive payment for 30 percent of the company's income for the load) and, at the very least, this is a factual issue to be decided at trial.

lawsuit. Given these circumstances, we cannot say on summary judgment that Staschiak did not intend to have the payment provisions of the handbook enforced.

{¶31} Finally, we must consider whether the foregoing analysis applies to Certified Logistics, which contends that the handbook applied only to Checkered Express, who issued the handbook in its name. As Staschiak stated in his affidavit, in 2009, he was informed that Certified was "now his employer," he received paychecks from Certified, not Checkered Express, and stated in his affidavit that he "was still required to obey the policies * * * set forth in the Checkered Express, Inc. Employee Handbook." We are mindful that the present matter is before us based on a grant of summary judgment and the evidence must be construed most strongly in Staschiak's favor. Civ.R. 56(C). Thus, we find that there is a genuine issue of material fact as to whether the handbook constituted an employment contract between Staschiak and Certified Logistics.

{¶32} Based on the foregoing analysis, we reverse the grant of summary judgment in favor of both Checkered Express and Certified Logistics and remand for further proceedings consistent with this opinion.

{¶33} The second assignment of error is with merit.

{¶34} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, granting the appellees' Motions for Summary Judgment and dismissing Staschiak's claims, is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellees.

CYNTHIA WESCOTT RICE, P.J., concurs,

TIMOTHY P. CANNON, J., concurs in judgment only with a Concurring Opinion.

11

_____

TIMOTHY P. CANNON, J., concurring in judgment only.

{¶35} I concur with the judgment of the majority that summary judgment in this case was not warranted. I write to clarify that this is not a wrongful discharge case. Appellant contends he was not paid what he should have been paid during his employment; appellant does not allege he was wrongfully discharged.

{¶36} Appellee and the trial court analyzed cases that deal with "implied contracts." "Implied contract" and "promissory estoppel" are theories typically used to establish *exceptions* to the employment-at-will doctrine. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103 (1985). They are typically used to establish liability in the context of a wrongful discharge claim. In this case, however, appellant acknowledges he was an employee at-will. Employment at-will is not an "implied" contract. Employment at-will is, in fact, an actual contract between an employer and an employee: the employer agrees to employ an individual and the individual agrees to perform certain services. It is simply terminable at the will of either party.

{¶37} While many employee manuals disclaim that it creates a contract, such disclaimer typically addresses that there is no guaranteed *term* of employment. In the absence of a contract that provides for a specific duration of employment, an employee is presumed to be employed at will, terminable at any time, with or without cause. *See Phung v. Waste Mgt., Inc.,* 23 Ohio St.3d 100 (1986).

{¶38} Here, there is a contract. It is for employment at will. There is no reason for the employee manual to exist except to establish various terms and conditions of employment. Neither of the appellees deny that appellant worked for them. They simply do not believe they owe appellant any money. Appellant disagrees and provided an affidavit setting forth the terms of the employee manual. He references the employee manual as proof of what he was to be paid by each employer. He claims he is still owed money. That is purely a question of fact.

{¶39} I respectfully concur in judgment only.