**Stephen L. LLOYD Plaintiff**

v.

**EAST CLEVELAND CITY SCHOOL DISTRICT, et al. Defendants**

**No. 1:99CV798.**

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 14, 2002.

David A. Forrest, Cleveland, OH, Sandra J. Rosenthal, Cleveland, OH, for Plaintiff.

Matthew J. Markling, Scott J. Peters, David K. Smith, Britton, McGown, Smith, Peters & Kalail, Cleveland, OH, Michelle Warner Waller, Thomas A. King, Jr., Baker & Hostetler, Cleveland, OH, for Defendants.

## MEMORANDUM OF OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WELLS, District Judge.

Plaintiff Stephen L. Lloyd filed a complaint, which has been amended twice,[1] against Hayward Sims, the East Cleveland City School District, the East Cleveland City Schools, and the Board of Education of the East Cleveland City School District (collectively "the Defendants") on 6 April 1999. He alleges disability discrimination and retaliation against him by the Defendants in violation of the Americans with Disabilities Act of 1990 (the "ADA") and Ohio Rev.Code §§ 4112.02, 4112.99, and violation of public policy under Ohio common law. The defendants filed a Motion for Summary Judgment on 1 August 2000.

On 7 May 2001, this Court referred the Motion for Summary Judgment to United States Magistrate Judge Nancy A. Vecchiarelli to prepare a report and recommendation ("R & R"). Magistrate Judge Vecchiarelli filed her R & R on 29 June 2001 recommending that the defendants' motion for summary judgment be granted in part. Specifically, she recommends summary judgment be granted in favor of the defendants on Mr. Lloyd's discrimination claims under the ADA and Ohio law and on Mr. Lloyd's public policy claim. She also recommends that Mr. Lloyd's retaliation claim survive the defendants' motion for summary judgment. Mr. Lloyd and the defendants timely filed their objections to the R & R.

Neither Mr. Lloyd nor the defendants have objected to the Magistrate Judge's recommendation that the defendants be granted summary judgment on Mr. Lloyd's public policy claim. It must therefore be assumed that the parties are satisfied with this recommendation. Any further consideration of the defendants' motion for summary judgment on this ground would be a duplicative and ineffi-

---

1. Mr. Lloyd's first amended complaint, filed on 9 August 1999, deleted Mr. Lloyd's claims for medical expenses and mental anguish. Mr. Lloyd's second amended complaint added claims under Ohio's Discrimination Statute, a claim that Mr. Lloyd had a history of being disabled, and added Hayward Sims, the former superintendent of the East Cleveland City Schools, as a defendant.

cient use of the Court's limited resources. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health and Human Servs.,* 932 F.2d 505 (6th Cir.1991); *U.S. v. Walters,* 638 F.2d 947 (6th Cir.1981). Accordingly, the Magistrate Judge's recommendation regarding Mr. Lloyd's public policy claim is adopted, and summary judgment will be granted in favor of the defendants on Mr. Lloyd's public policy claim.

For the following reasons, the rest of the Magistrate Judge's R & R will be adopted in part. Defendant's Motion for Summary Judgment will be denied as to Mr. Lloyd's discrimination claim and retaliation claim under the ADA and Ohio law.

### I. *Factual Background*

Magistrate Judge Vecchiarelli summarized the factual background as follows:

The Board hired Lloyd to serve as principal of Shaw High School ("Shaw") starting August 24, 1989. Lloyd held this position pursuant to a contract with the Board, which was originally subject to renewal every two years.

In January 1991, Lloyd was involved in an automobile accident in which he sustained severe injuries, including two broken legs, a broken pelvis, a broken jaw, and internal injuries. (Lloyd Depo., p. 25–6.) As a result, Lloyd underwent two surgeries in January 1991 and remained in the hospital approximately thirty days. Further, Lloyd was on sick leave for the second semester of the 1990–91 school year. (Lloyd Depo., p. 25, 28.) Lloyd's doctor noted he was totally incapacitated during his sick leave. (Sims Depo., Ex. T.) In June 1991, Lloyd returned from sick leave without any restrictions and resumed his duties as principal of Shaw. Since his return, Lloyd's only request has been a

key to the elevator. (Stephen Lloyd Affidavit.)

Lloyd alleges that upon his return as principal, he walked slowly and with a limp. (Stephen Lloyd Affidavit; Lloyd Depo., p. 25–7, 115, 126; Tuttle Depo., p. 26.) According to Sims [2], Lloyd did not inform any Board or faculty member that he suffered from a disability or required an accommodation at any time after his return. (Sims Depo., p. 206, 208–11.)

In 1991 and 1993, the Board renewed Lloyd's two year contract upon Sims's recommendation. (Lloyd Depo., p. 24, 34.) Also, Lloyd underwent two additional follow-up surgeries in 1993 and 1995 for his injuries sustained in the 1991 automobile accident. Lloyd was unable to work for three weeks following each surgery. (Lloyd Depo., p. 125.) Lloyd claims upon his return after each surgery, he walked with a limp. On February 23, 1995, Lloyd wrote Sims a letter informing him of possible additional surgery. (Lloyd Depo., Ex. 4.)

On March 6, 1995, the Board notified Lloyd that his contract was up for renewal and gave him the option of appearing before the Board. (Sims Depo., Ex. M.) According to Lloyd, the Board did not notify him of the expiration of his contract the previous two times. (Lloyd Depo., p. 42.) At the board meeting, on March 30, 1995, the five board members voted to renew Lloyd's contract for only one year, unlike his previous contracts which were renewed every two years. (Lloyd Depo., p. 51; Ex. 8.) The Board alleges the one year period was due to its and Sims's dissatisfaction with Lloyd's performance as principal of Shaw. (Sims Depo., Ex. V.) However, Lloyd states that he received consistent positive evaluations through-

---

**2.** Mr. Sims is the superintendent of the school district and supervisor of Mr. Lloyd.

out his administrative career. (Sims Depo., Ex. A–G.) Sims prepared annual written evaluations of Lloyd's work performance. (Sims Depo., p. 7, 14–5, 57–8.) None of Lloyd's evaluations denoted performance below the expected level. (Sims Depo., Ex. A–G.)

Further, Sims claims that the Board recommended that he create some goals and objectives and confer with the Board to develop them. (Lloyd Depo., p. 63, 105–06.) The objectives that Sims and the Board developed included the need for improvement in student and teacher attendance, dress code, student discipline, student achievement, and school leadership by demonstrating an administrative team effort. (Sims Depo., Ex. N.) On April 26, 1995, Sims sent Lloyd a written memorandum listing the objectives Lloyd was to meet. (Stephen Lloyd Affidavit.) However, Lloyd alleges that Sims would not discuss Lloyd's questions or concerns about the objectives. (Sims Depo., Ex. O, P; Lloyd Depo., p. 43–6, Ex. 7.)

Due to the shortened renewal period and the Board's stated reason for the action, *i.e.*, unsatisfactory work performance, Lloyd filed a charge with the Equal Employment Opportunity Commission ("EEOC") on June 28, 1995, claiming that the Board issued only a one year contract because of his "record of having a disability" arising from the 1991 auto accident. (Sims Depo., Ex. V.) Emma Whatley, a board member, testified that the entire Board was upset, including herself, that Lloyd filed the charge. (Whatley Depo., p. 176–79.)

On March 26, 1996, the Board unanimously concluded that it would not renew Lloyd's contract for another term. (Jordan Depo., p. 84–5; Drake Depo., p. 99; Sims Depo., Ex. R.) Hence, Lloyd was no longer principal after the one year term expired. The Board alleges that Lloyd had not improved in his ex-pected leadership, including a failure to raise student proficiency performance, improve Shaw's student attendance, and to enforce student discipline and compliance with Board policies. (Sims Depo., p. 195–96.)

On April 6, 1999, Lloyd initiated the instant action. Lloyd asserts claims for discrimination and retaliation under the ADA and O.R.C. §§ 4112.02 and 4112.99, as well as a common law claim for violation of public policy. Defendants filed a motion for summary judgment in which they claim they are entitled to judgment as a matter of law.

(R & R at 2–4).

## II. Standards

Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court reviews *de novo* the portion of the Magistrate Judge's report and recommendation to which specific objection was made. In this case, both Mr. Lloyd and the defendants have filed objections to the R & R. Mr. Lloyd objects to the Magistrate Judge's recommendation that summary judgment be granted in favor of the defendants on his discrimination claim and the defendants object to the recommendation that Mr. Lloyd's retaliation claim survive summary judgment.

Summary judgment is proper if the court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an ele-

ment essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party bears the burden of proof in the case, the initial burden on the moving party under Rule 56 "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087 (6th Cir.1996). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court applies the above stated standard to this case.

### III. Analysis

### A. The Discrimination Claim

Under the ADA § 3, "disability" is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Mr. Lloyd does not claim that he has a present on-going disability. Instead, he argues that he was regarded as being disabled, and that he had a record of disability. The defendants argue the opposite.

### 1. Regard As Disabled

Magistrate Judge Vecchiarelli concluded that Mr. Lloyd failed to establish that he was regarded as disabled for the following reasons: (1) Mr. Lloyd's impairment was temporary, non-chronic, and of short dura-tion with little or no long-term or permanent impairment; (2) Defendants' knowledge that Lloyd had been in an accident, needed surgery, or had a limp or some impairment in his ability to walk does not establish that Defendants regarded Lloyd's impairment as being so severe that it substantially limited a major life activity, that is, the ability to walk; (3) A Board member's remark that Lloyd should take a year off to get himself together physically and contemplate his future plans does not tend to show the Board regarded Lloyd as having a long term, permanent or chronic impairment; and (4) Even if the Defendants' compliance with Lloyd's request for an elevator key was an accommodation, a request for an accommodation does not by itself establish that Defendants regarded Lloyd as disabled.

Mr. Lloyd raises two objections to the Magistrate Judge's conclusion that the Board did not regard Mr. Lloyd as disabled. First, he argues that Magistrate Judge Vecchiarelli should not have considered the temporary nature of his disability in deciding whether the Board regarded him as disabled. Second, Mr. Lloyd argues that the Magistrate Judge did not consider the evidence as a whole when reaching her conclusion. This Court will not address Mr. Lloyd's second argument because it is a bare assertion with no showing.

██ Magistrate Judge Vecchiarelli properly considered the temporary nature of Mr. Lloyd's disability in deciding whether the Board regarded him as disabled. An employee is regarded as disabled if he or she is regarded as being substantially limited in a major life activity. 42 U.S.C. § 12102(2). "The determination of whether an impairment substantially limits a major life activity requires a consideration of '... (ii)[t]he duration or expected duration of the impairment ...' 29 C.F.R.

§ 1630.2(j)(2) (1995)." *Roush v. Weastec, Inc.* 96 F.3d 840, 843 (6th Cir.1996). "Generally, short term, temporary restrictions are not substantially limiting." *Id.See also Penny v. United Parcel Service,* 128 F.3d 408, 414 (6th Cir.1997). Therefore, it is appropriate to consider whether an impairment is permanent or temporary when determining whether an individual is regarded as disabled. This Court will adopt Magistrate Judge Vecchiarelli's recommendation that Mr. Lloyd was not regarded as disabled by the defendants as that term is used in the ADA.

### 2. Record of Being Disabled

Magistrate Judge Vecchiarelli decided that Mr. Lloyd failed to establish that he had a record of being disabled for the following reasons: (1) Mr. Lloyd's impairment was short-term (about six months) and temporary with no severe or long-term effects; and (2) Mr. Lloyd's medical documentation did not state the severity of his medical condition or that the condition substantially limits a major life activity. Mr. Lloyd objects to that conclusion and argues that as he was incapacitated for nearly six months following his accident and for shorter periods of time after his follow up surgeries, his incapacity was not a short term, temporary occurrence.

Defining "record of impairment" is difficult. The EEOC regulations define "[h]as a record of such impairment" as meaning "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more of one's major life activities." 29 C.F.R. § 1630.2(k). On the one hand, short-term, temporary conditions are not substantially limiting, thus are not disabilities. *Roush v. Weastec, Inc.,* 96 F.3d at 843. "[T]emporary, non-chronic impairments with little or no long term or permanent impact, are usually not disabilities .... Such impairments include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza." 29 C.F.R. § 1630.2(j)(2) Appendix. Some courts thus conclude that to show a record of impairment, the impairment must be "permanent or long-term." *Gutridge v. Clure,* 153 F.3d 898, 901 (8th Cir.1998) (holding that "impairments while recovering from surgery are not evidence of a permanent disability" and plaintiff failed to show record of disability).

On the other hand, the words "record" and "history" could indicate that the impairment is not long-term or permanent. Under this view, plaintiff only needs to show that "at some point in the past" he/she had an impairment that substantially limited a major life activity. *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1120–21 (5th Cir.1998). Under "record of impairment," ADA covers "people who have recovered from previously disabling conditions (cancer or coronary disease, for example) but who may remain vulnerable to the fears and stereotypes of their employers." *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 509 (7th Cir.1998). Plaintiffs under this category do not have to "demonstrate a present impairment that is substantial enough to qualify as disabling under the ADA." *Id.*

This Court concludes that to establish a record of disability, the plaintiff does not have to demonstrate that the impairment is permanent or long-term. However, it does not follow that any short-term or temporary conditions can qualify as a record of disability. The duration and the long-term effect of a condition is an important factor in evaluating whether an impairment substantially limits a major life activity. This evaluation is a case by case one. The nature of the impairing condition, the severity of the impairment, and the type of major life activities the impairment limits, are all important factors to consider.

■ Under the standard for summary judgment, this Court must view the evidence in the light most favorable to the party opposing the motion, Mr. Lloyd. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Mr. Lloyd has presented the following evidence to show his record of disability: a disability certificate from his physician certifying that Mr. Lloyd was totally incapacitated from 7 January 1991 to 26 June 1991 (Sims Depo., Ex. T); and his medical record. Specifically, his medical records show that following his surgery in January 1991, Mr. Lloyd was unable to walk for a period of time. The progress notes of Mr. Lloyd's physician in February and March 1991 show that Mr. Lloyd was walking with the help of a walker. The April 1991 progress note shows that Mr. Lloyd was walking with the help of crutches. (Pl.Ex. Tab.19.) Although Mr. Lloyd made improvement in his ability to walk, he was not completely recovered. Mr. Lloyd underwent two additional follow-up surgeries in 1993 and 1995 and was unable to work for three weeks following each surgery. (Lloyd Depo., p. 125.) Granting Mr. Lloyd the benefit of reasonable inferences that can be drawn from these facts, Mr. Lloyd has presented a factual dispute of whether he had a record of disability. *See EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 655–56 (5th Cir.1999). Summary judgment cannot be granted in favor of defendants on the "record of disability" claim.

**B. The Retaliation Claim**

■ To establish a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate that: (1) the plaintiff engaged in protected activity; (2) the defendant was aware of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse action. *Walborn v. Erie*

*County Care Facility*, 150 F.3d 584, 588–89 (6th Cir.1998).

■ Once a plaintiff establishes the *prima facie* case, it "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff may meet the burden of persuading a court that he or she has been the victim of retaliation, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. 1089.

The burden then shifts to the defendant to rebut the presumption of retaliation by producing evidence of a legitimate, nondiscriminatory reason for which the plaintiff was rejected or someone else was preferred. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994).

■ If the defendant sets forth a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to show that the employer's proffered reason is a pretext for retaliation. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990). The plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions. *Manzer*, 29 F.3d at 1083. To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show either that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the action, or (3) were insufficient to motivate the action. *Id.* at 1084.

The defendants in this case argues that Mr. Lloyd failed to establish the fourth

element of the prima facie case: that a causal connection existed between Mr. Lloyd's filing the complaint to the EEOC and his job termination. They also offered a legitimate, non-discriminating reason for Mr. Lloyd's termination: that Mr. Lloyd failed to demonstrate satisfactory progress in achieving the goals and objectives set forth by the Superintendent Mr. Sims, and the Board wanted new leadership to address ongoing significant problems plaguing Shaw High School.

Mr. Lloyd argues that he has established the existence of a causal link between his filing the EEOC complaint and his termination by showing the nine-month time proximity between the two events and the remarks made by certain Board members expressing anger toward him for filing the complaint. Mr. Lloyd further argues that the Board's proffered reason for firing him was a pretext because he received good job performance evaluation from Mr. Sims three months prior to Mr. Lloyd's termination.

■ Magistrate Judge Vecchiarelli agrees with Mr. Lloyd and recommends that defendants' motion for summary judgment be denied on the retaliation claim. The defendants object on three grounds: that there was no causal connection between the filing of Mr. Lloyd's EEOC claim and the decision to not renew Mr. Lloyd's contract; that the defendants articulated a legitimate, nondiscriminatory reason for not renewing Mr. Lloyd's contract; and that Mr. Lloyd failed to show pretext.

Based on the nine month proximity between the filing of Mr. Lloyd's EEOC claim and the anger some Board members expressed toward Mr. Lloyd for filing the claim, a jury could reasonably find that there was a causal connection between the claim filing and the termination. A jury could also reasonably find that the Board's proffered reason for not renewing Mr.

Lloyd's contract was a pretext for retaliation, relying on the fact that the evaluation Mr. Lloyd received three months prior to his termination ranked his performance "superior" and stated that he was an "able administrator." Therefore, Mr. Lloyd's retaliation claim survives the summary judgment motion.

### IV. Conclusion

For the reasons stated above, Magistrate Judge Vecchiarelli's R & R is adopted in part. Defendants' Motion for Summary Judgment is granted in part. Summary Judgment is granted in favor of Defendants on Count 3, the public policy claim. Defendants' Motion for Summary Judgment is denied on Count 1, the discrimination claims under the ADA and Ohio Rev.Code Chapter 4112, and Count 2, the retaliation claims under the ADA and Ohio Rev.Code Chapter 4112.

IT IS SO ORDERED.