Mary Lou SENTER, Plaintiff,

v.

**HILLSIDE ACRES NURSING CENTER OF WILLARD, INC., et al., Defendant.**

**No. 3:03 CV 7638.**

United States District Court, N.D. Ohio, Western Division.

Sept. 14, 2004.

---

Heather Love Carman, Goodrum & Carman, Sandusky, OH, for Plaintiff.

Dean E. Westman, Kastner, Westman & Wilkins, Lisa A. Kainec, Kastner, Westman & Wilkins, Akron, OH, for Defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' Motion for Partial Summary Judgment (Doc. No. 25). Plaintiff has filed a response (Doc. No. 26); Defendant, a reply (Doc. No. 28). For the reasons stated below, Defendants' motion will be granted in part and denied in part.

### BACKGROUND

Taken in the light most favorable to Plaintiff, the facts are these. Plaintiff Mary Lou Senter applied to work at Hillside Acres Nursing Home (Hillside) in 1999.[1] In her application, Plaintiff stated she was looking for any kind of work and informed Hillside that she suffered from thrombophlebitis and vericose veins. Hillside hired Plaintiff on June 8, 1999, to work in its Housekeeping Department, which required Plaintiff to work in the areas of "housekeeping, laundry, apartments, bed washing, and personals." Plaintiff and her supervisor, Defendant Lois Hicks ("Hicks"), agree that Plaintiff could do the job.

---

1. In July 2001, Liberty Nursing Centers of Willard, Inc. bought Hillside Acres and continued to operate it under that name. The Court will refer to the nursing home, regardless of ownership, as "Hillside."

On June 9, 1999, Hillside gave Plaintiff "Hillside Acres' Staff Handbook For Hourly Employees." This handbook provided that:

16.1 A staff member who has worked for Hillside Acres for at least twelve (12) months and for at least 1250 hours during the prior twelve (12) months may take up to twelve (12) weeks of unpaid family medical leave as required by the Family and Medical Leave Act of 1993 for the following reasons ... (iii) A serious health condition which renders the staff member unable to perform the functions of his or her position....

. . . .

16.9 Staff members who return to work from a family medical leave of absence within or on the business day following the expiration of the twelve (12) weeks are entitled to return to their job or an equivalent position without loss of benefits or pay.

(Doc. No. 25, Exhibit F, pp. 14–15). This handbook also included a disclaimer stating:

This Handbook ... is not to be relied upon as a contract of employment, either actual or implied, a promise by Hillside, or as consideration for you to accept employment or to continue employment with Hillside. Hillside Acres Nursing Home reserves the right to change, add to, and delete provisions of this Handbook, without notice.

(Doc. No. 25, Exhibit F, p. 1). Additionally, Plaintiff signed a waiver acknowledging that:

This Handbook is presented for informational purposes only and can be changed by the company at any time with or without notice. This Handbook is not a contract, express or implied, between the employee and the Company, nor shall it be construed to create such a contract.

I further understand that my employment is at-will and thereby understand that my employment can be terminated at-will by the facility or myself and that such termination can be made with or without notice.

I hereby acknowledge that I have received and understand the employee policy handbook of Hillside Acres Nursing Home and also understand that these policies are subject to change at any time.

(Doc. No. 25, Exhibit I, p. 32).

When Hillside was purchased by Liberty Nursing Centers in 2001, Hillside issued a new employee handbook containing a materially similar Family and Medical Leave provision, which added that employees returning from family or medical leave "will be guaranteed" in lieu of the same or an equivalent position, "alternative employment assistance if the employee's position is eliminated or the employee is laid-off during the leave period." (Doc. No. 25, Exhibit H, p. 12). The second handbook contained a disclaimer reading:

The contents of this handbook are not all-inclusive and are presented as a matter of information only. While we believe wholeheartedly in the policies and procedures described here, they are not conditions of employment and are subject to change without notice.

(Doc. No. 25, Exhibit H, p. 1). Plaintiff also signed a new waiver, in which she acknowledged:

I understand that the information, policies, and benefits described [in the handbook] are subject to change, with or without notice. I further understand that in the event of a conflict between handbook information and official policy information, the policies supercede the handbook.

[E]ither I or Hillside Acres can terminate the employment relationship at will, with or without cause, at any time.

Furthermore, I acknowledge that this handbook is neither a contract for employment nor a legal document. I have had an opportunity to read the handbook and understand the policies and procedures.

(Doc. No. 25, Exhibit I, p. 33).

During her employment with Hillside, Plaintiff occasionally missed work due to various medical conditions. In all of those cases, Plaintiff was granted the leave she required and was put back to work when her doctors indicated she was able to return. When Plaintiff returned to work with temporary restrictions on her ability to scrub on her hands and knees and to use a buffer, Hillside allowed her to return to work and to perform all of her duties except the restricted ones.

In January 2002, Plaintiff developed an ulcerated sore the size of a silver dollar on her leg. On January 24, 2004, Plaintiff's doctor placed her in a boot wrap, told her to stay off her feet, and instructed her to take medical leave from work until March 11, 2002. The sore healed, and on April 5, 2002, Plaintiff's doctor issued her a return to work slip indicating she could resume working on April 15, 2002, with no restrictions.

Plaintiff spoke with Hicks and the Hillside Acres administrator, Defendant Randy Bee ("Bee"), who both suggested Plaintiff get a new return to work slip from her doctor. Plaintiff did so, and the doctor issued a new slip stating that Plaintiff could perform all her regular housekeeping duties except running the buffer/stripper. When Plaintiff presented the new slip to Hicks and inquired when she was to begin work, Hicks informed Plaintiff that Hicks had not made out the work schedule, and instructed Plaintiff to return later. When Plaintiff returned to find her name was not on the newly posted schedule, Hicks informed her that the schedule had already been made out but that Plaintiff could expect to be placed on the next two-week work schedule.

Hicks did not put Plaintiff on that schedule either, and when Plaintiff inquired as to why, Hicks told Plaintiff it was because the company was over its budget. When Plaintiff was not on the next two-week schedule, she again asked Hicks why she was omitted. This time Hicks told Plaintiff, "you can't come back because you need a sit-down job and because of your medical." (Doc. No. 25, Attachment 3, p. 107). Plaintiff then asked Hicks to put the reason in writing. Hicks indicated she needed to speak with Bee before doing so, and instructed Plaintiff to return the following Monday to receive the written note. When Plaintiff returned and requested the note from Hicks, Hicks claimed, "Oh, I didn't say that."

On May 13, 2002, Plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC"), claiming Hillside discriminated against her based on her age and disability. The OCRC issued a finding of "no probable cause." Plaintiff requested reconsideration, and OCRC's Regional Director affirmed the finding of "no probable cause."

Plaintiff filed suit on October 7, 2003 in Huron County, Ohio Common Pleas Court. While Plaintiff's Complaint does not clearly state the claims she purports to make, after careful scrutiny the Court discerns claims based on violations of the Family and Medical Leave Act, the Americans with Disabilities Act, and the Age Discrimination in Employment Act; violations of concomitant Ohio age and disability statutes; breach of contract; and, as the Court will discuss below, promissory estoppel. Defendants removed the case to this Court and filed a motion for partial

summary judgment as to Plaintiff's breach of contract claims, federal and state "regarded as" disabled claims, and state law age discrimination claims (Doc. No. 25).

## DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56©. The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323–25, 106 S.Ct. 2548. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2541, 91 L.Ed.2d 202 (1986) (*quoting* FED.R.CIV.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir.2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

■ "In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F.Supp.2d 1069, 1071 (E.D.Mich.2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987)). However, " 'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,' " *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F.Supp.2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D.Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir.2000).

### B. BREACH OF CONTRACT CLAIM

Defendants move for summary judgment on Plaintiff's breach of contract and

breach of implied contract claims. Plaintiff asserts breach of contract based on (1) the portions of Hillside's employee handbooks detailing employees' rights to return to the same or an equivalent job after taking medical leave under the FMLA and a written document circulated to Hillside employees detailing these same FMLA rights; and (2) an oral representation by Plaintiff's supervisor to Plaintiff that Hillside only terminated employees for cause.

1. Employee Handbooks and Written FMLA Document

■ "[E]mployee handbooks are not in and of themselves a contract for employment." *Wright v. Honda of America Mfg., Inc.* 73 Ohio St.3d 571, 575, 653 N.E.2d 381, 384 (1995). "[A]n employee handbook may provide the terms and conditions of an at-will employment relationship ... if the employer and employee manifest an intention to be bound by the handbook provisions." *Finsterwald–Maiden v. AAA S. Cent. Ohio,* 115 Ohio App.3d 442, 446, 685 N.E.2d 786, 789 (Ohio App.[4] Dist.1996). Absent that mutual assent to be bound, "the handbook is simply a unilateral statement of rules and policies that creates no obligation or rights." *Id.* When the handbook disclaims intent to create a contract or provides that it may be unilaterally amended or altered by the employer at any time, there is no mutual assent to be bound. *Abel v. Auglaize County Highway Dept.,* 276 F.Supp.2d 724, 742 (2003); *Karnes v. Doctors Hospital,* 51 Ohio St.3d 139, 141, 555 N.E.2d 280 (1990); *Finsterwald–Maiden,* 115 Ohio App.3d at 447, 685 N.E.2d at 789–90.

■ Here, though Hillside's employee handbooks spelled out the FMLA's return to work requirements for medical leave, the handbooks contained clear and unambiguous language disclaiming contractual liability and reserving the right to change without notice the policies described. Thus, the handbooks demonstrate a lack of intent on the part of Hillside to be bound by their terms. They are nothing more than unilateral statements of company policy that create no contractual liability. Likewise, Plaintiff has presented no evidence that the written document Hillside circulated describing employees' rights under the FMLA was anything more than a unilateral reiteration of company policy and/or federal law.

2. Oral Representations

■ Unless otherwise agreed, employment relationships in Ohio are terminable by either party at-will. *Wright,* 73 Ohio St.3d at 574, 653 N.E.2d at 384. *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 103, 483 N.E.2d 150, 153 (1985). "[O]ral representations made by supervisory personnel that employees have been promised job security in exchange for good performance" may create a factual issue as to whether an at-will employment agreement has been altered by an implied contract. *Wright,* 73 Ohio St.3d at 575, 653 N.E.2d at 384. However, "oral representations that an employer will only terminate for just cause are only unilateral statements of company policy and are not sufficient to alter an at-will employment agreement." *Evans v. Medical Mutual of Ohio,* No. 77092, 2001 WL 259189 at *5, 2001 Ohio App. LEXIS 1148, at *14 (8th Dist. Mar. 15, 2001); *see also Stumpf v. Cincinnati Inc.,* Nos. C–960605, 960632, 1997 WL 789401 at *3, 1997 Ohio App. LEXIS 5767, at *7–8 (Ohio App.[1]Dist.1997) ("Generally, oral representations as to company policy do not create employee rights which alter the at-will nature of employment unless the parties have a 'meeting of the minds'.... Absent the necessary mutual assent by the employer and the employee ... these statements merely constitute unilateral as-

sertions of company rules, regulations, or goals.").

■ In the case *sub judice*, Plaintiff acknowledged upon receiving both employee handbooks that her employment was at-will. Plaintiff nevertheless claims that her supervisor told her Hillside only fired employees for cause. Such an oral representation is merely a unilateral statement of policy and does not alter the at-will nature of Plaintiff's employment or give rise to contractual liability. Plaintiff points to no other oral representations upon which she purports to base her breach of contract claim.

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment is granted as to Plaintiff's breach of contract and breach of implied contract claims.

## C. Federal and State "Regarded As" Disabled Claims

Defendants also move for summary judgment on Plaintiff's claim that she was terminated because Defendants regarded her as disabled. Under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.*, a covered entity may not discriminate against an employee with a disability on the basis of that disability in regard to, among other things, the discharge of the employee. 42 U.S.C. § 12112(a). Likewise, under Ohio's comparable statute, an employer may not, because of the disability of an employee, discharge the employee without just cause. Ohio Rev.Code § 4112.02(A).

■ To state a prima facie case under the ADA, a plaintiff must show that:
(1) he or she is disabled; (2) is otherwise qualified for the job, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of his or her disability; and (5) after rejection or termination the posi-

tion remained open, or the disabled individual was replaced.

*Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1185 (6th Cir.1996) (internal citations omitted).

■ Under Ohio Rev.Code § 4112.02(A), a plaintiff must show:
(1) that he or she was handicapped, (2) that an adverse employment decision was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question.

*City of Columbus Civ. Serv. Comm'n v. McGlone,* 82 Ohio St.3d 569, 571, 697 N.E.2d 204, 206 (1998).

The ADA definition of "disability" includes "being regarded as" having "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual. 42 U.S.C. § 12102(2). Similarly, as used in Ohio Rev.Code § 4112.02, " 'disability' means a physical impairment that substantially limits one or more major life activities ... or being regarded as having a physical or mental impairment." Ohio Rev.Code § 4112.01(A)(13).

■ Ohio courts regard the § 4112.02(A) prima facie case as "virtually identical" to the ADA's, *Sandinsky v. EBCO Mfg. Co.,* 134 Ohio App.3d 54, 59, 730 N.E.2d 395, 398 (Ohio-App.[10]Dist1999), and "look to regulations and cases interpreting the [ADA] for guidance" in interpreting the Ohio law." *City of Columbus Civ. Serv. Comm'n,* 82 Ohio St.3d at 573, 697 N.E.2d at 207. The Court, therefore, will examine Plaintiff's claims under both the state and federal statutes using the same analysis.

■ The United States Supreme Court has explained that in order for an individu-

al to be "regarded as" disabled, "it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Sutton v. United Air Lines*, 527 U.S. 471, 489, 119 S.Ct. 2139, 2149–50, 144 L.Ed.2d 450, 466–67 (1999). An employee may be "regarded as" disabled "if an employer ascribes to that individual an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's requirements." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir.2001).

■■■ "Working" is a "major life activity." 29 C.F.R. § 1630.2(I); Ohio Rev. Code § 4112.01(A)(13). When "working" is the "major life activity" that the alleged or perceived impairment substantially limits:

The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(I). An employer therefore violates the ADA and Ohio Rev. Code § 4112.02(A) when it discharges an employee without cause because the employer believes the employee's ability to perform either a class of jobs or broad range of jobs in various classes is significantly restricted compared to the average person with comparable training, skills, and abilities.

In *Ross*, the employee suffered from back pain and had in the past taken medical leave. *Ross*, 237 F.3d at 702. Until the incident leading to his termination, this occasional medical leave had led to no adverse consequences at his job with Campbell Soup Co. *Id.* at 703. After taking what would be his final medical leave from Campbell Soup Co., Ross presented a full medical release to Campbell and was ordered back to work, despite his claim of continued plain and desire to take more time off. *Id.* at 703. When Ross returned to work as a salesman, the company increased his sales goals to what Ross believed to be unreasonable levels and placed him on probation when he failed to meet them. *Id.* at 704. Finally, Ross was fired. *Id.* at 705. There was some evidence that Ross had artificially inflated his sales performance totals. *Id.* at 704–05. Ross sued, claiming, among other things, that he had been fired because the employer regarded him as disabled. *Id.* at 705. The district court granted summary judgment in favor of the employer because it believed Ross was fired not because Campbell believed he had a disability, but rather because it believed he did not and was "malingering in his time off of work." *Id.*

■■■ The United States Sixth Circuit Court of Appeals for the Sixth Circuit reversed, despite the evidence of poor job performance, citing evidence that Ross's supervisors circulated memoranda referring to him as a "back case," asking when this "problem person" could be brought to a "termination status," and tracking his back-related work absences, and told Ross that " 'we can't have any more of this back thing.' " *Ross*, 237 F.3d at 707. This amounted to "substantial evidence that … medical status played a significant role in [the] employer's decision to fire," and gave rise to a genuine issue of material fact on the "regarded as" disabled claim. *Id.* at 707, 709. The *Ross* court explained:

Proving that an employee is regarded as disabled in the major life activity of

working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs. As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult. Yet the drafters of the ADA and its subsequent interpretive regulations clearly intended that plaintiffs who are mistakenly regarded as being unable to work have a cause of action under the statute. Whether Ross is such a plaintiff lies in the question of whether Campbell Soup Co. regarded him as substantially limited from performing a broad class of jobs. In cases such as this one, where there is substantial evidence that an individual's medical status played a significant role in an employer's decision to fire that individual, combined with evidence that the employer concocted a pretextual justification for that firing, the need for more extensive factual inquiry into whether the employer engaged in unlawful discrimination is especially acute.

*Id.* at 709. In short, "[u]nder the 'regarded as' prong of the ADA, membership in the protected class becomes a question of intent," and " 'that question-i.e., the employer's motive—is one rarely susceptible to resolution at the summary judgment stage.' " *Ross,* 237 F.3d at 706. Likewise, "it is generally a jury question whether a perceived class of jobs is substantial enough to qualify as a 'broad class.' " *Cot-*

*ter v. Ajilon Servs., Inc.,* 287 F.3d 593, 599–600 (6th Cir.2002).

In the case *sub judice,* Plaintiff claims her supervisor, Lois Hicks, failed repeatedly to put her on the work schedule after Plaintiff presented a return to work slip with a full medical release. Plaintiff asserts that when she asked Hicks the reason she was not scheduled to work, her supervisor told her "you can't come back because you need a sit-down job and because of your medical." Hicks's statement provides a rare example of direct evidence that the employer actually did "consider the panoply of other jobs" the employee could perform. It baldly suggests that Plaintiff's medical status played a significant role in the decision to fire her and that Hicks believed Plaintiff to be unsuited for other than "sit-down" work.

The Court finds Plaintiff's testimony about Hicks's statement sufficient to create a genuine issue of material fact as to whether Hicks terminated Plaintiff because Hicks believed Plaintiff's ability to perform either a class of jobs or broad range of jobs in various classes was significantly restricted compared to the average person with comparable training, skills, and abilities. Whether "other than sit-down jobs" is a "broad class" is most appropriately a matter for the jury, as the Sixth Circuit pointed out in *Cotter.* The Court is certain, however, that non-sit-down jobs do not amount to, as Defendants suggest, a "small group of jobs" akin to the specific position of surgeon in *Swanson v. University of Cincinnati,* 268 F.3d 307 (6th Cir.2001).

Moreover, the Court finds that as Plaintiff has presented evidence that she successfully performed the job of housekeeper at Liberty Nursing for several years and was terminated from that position, a genuine issue of material fact exists as to the

other elements of Plaintiff's ADA and Ohio Rev.Code § 4112.02(A) prima facie cases.

Defendants urge the Court to grant them summary judgment based on the temporary nature of Plaintiff's ulcerated leg sore, citing to *Lloyd v. East Cleveland City School District*, 232 F.Supp.2d 806 (N.D.Ohio 2002) and *Swanson*. The "duration or expected duration of the impairment" is one factor that should be considered "in determining whether an individual is substantially limited in a major life activity," i.e., is actually disabled. 29 C.F.R. § 1630.2(j)(2). The *Lloyd* court also considered it "appropriate to consider whether an impairment is permanent or temporary when determining whether an individual is regarded as disabled." *Lloyd*, 232 F. Supp 2d at 812.

However, the facts before the courts in *Lloyd* and in *Swanson* were quite different from the case *sub judice*, and those cases are inapposite to this case. The plaintiff in *Swanson* was terminated before fully benefitting from treatment for depression, and the court nevertheless found that his employer did not regard him as disabled. *Swanson*, 268 F.3d at 318. In *Lloyd*, the plaintiff based his "regarded as" disabled claim on the employer's knowledge that he had been in a car accident, needed surgery, and presently had a limp. *Id.* at 811. Essentially, Lloyd asked the court to find that the employer regarded him as disabled based on the employer's knowledge of Lloyd's injuries. The court therefore found it appropriate to consider the temporary nature of the injuries.

In the case *sub judice*, Plaintiff's treatment was complete when she attempted to return to work, and Plaintiff does not base her claim on Defendants' knowledge of her injuries. Rather, Plaintiff claims her supervisor told her that she could not return to work because she needed a sit-down job and because of her "medical," after Plaintiff presented a medical release with no restrictions. Nothing about Hicks's alleged statement indicates that Hicks believed the medical condition limiting Plaintiff to sit-down jobs was temporary, and the Court may not so infer, as it must view all of the evidence in the light most favorable to Plaintiff. The temporary nature of Plaintiff's already healed ulcerated sore does not therefore preclude Plaintiff from raising a genuine issue of material fact as to whether Defendants regarded has as disabled.

Defendants also direct the Court to *Plant v. Morton International, Inc.*, 212 F.3d 929 (6th Cir.2000), for the proposition that an employee may not prove a regarded as disabled claim "merely by pointing to that portion of the record in which his supervisor admitted that [the supervisor] was aware of [the employee's] medical restrictions and modified [the employee's] responsibilities based on them." *Plant*, 212 F.3d at 938. Plaintiff has not alleged that Hicks's statement was an admission that Defendants were aware of Plaintiff's medical restrictions-in fact, Plaintiff claims she had no medical restrictions. Plaintiff has not alleged that Defendants modified her responsibilities based on any medical restrictions-in fact, Plaintiff claims they fired her. *Plant*, therefore, is inapposite.

Plaintiff has demonstrated that a genuine issue of material fact exists as to whether Defendants discharged her because they regarded her as disabled, in violation of the ADA and Ohio Rev.Code § 4112.02(A).

For the foregoing reasons, Defendants' Partial Motion for Summary Judgment is denied as to Plaintiff's "regarded as" disabled claims.

## D. OHIO AGE DISCRIMINATION CLAIM

Though it is not entirely clear, Defendants discern in Plaintiff's Complaint claims of age discrimination under Ohio

law. Plaintiff has failed to respond to Defendants' motion for summary judgment as to the ostensible Ohio age claims, so the matter remains unclear. Defendants base their conclusion on Plaintiff's assertions that she was the victim of age and disability discrimination and that her injuries were caused by "Defendants' violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act and comparable Ohio Revised Code Sections." Defendants reason that since Title VII and the ADA do not address age discrimination, *see* 42 U.S.C. § 2000e–2(a) (prohibiting discrimination based on race, color, religion, sex, or national origin); 42 U.S.C. § 12112(a) (prohibiting discrimination based on disability), Plaintiff's age claims must arise under the "comparable Ohio Revised Code Sections."

While the portions of the Ohio Revised Code which are strictly comparable to Title VII and the ADA also, by definition, do not address age discrimination, Ohio Rev. Code § 4112.02(A) groups prohibitions on discrimination on the bases of age, disability, race, color, religion, sex, national origin, and ancestry together into one statutory subsection. Moreover, Plaintiff's complaint alleges facts which, if true, would be sufficient to establish a prima facie case under either the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., or under Ohio's comparable statutory scheme. The Court will therefore address Defendants' motion for summary judgment on Plaintiff's Ohio age discrimination claims.

The Ohio Revised Code provides four possible avenues through which employees may pursue a claim of age discrimination. Plaintiff does not specify in her complaint which avenue she purports to travel. The Court, therefore, will consider them all. First, Ohio Rev.Code § 4112.02(A) prohibits employers from discharging employees without just cause based on "race, color,

religion, sex, national origin, disability, age, or ancestry." Victims of age discrimination in violation of § 4112.02(A) may enforce their rights by filing a civil lawsuit under Ohio Rev.Code § 4112.02(N). Second, Ohio Rev.Code § 4112.14(A) provides a separate, stand-alone prohibition on the "discharge without just cause [of] any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." Employees may enforce their § 4112.14(A) rights by filing a civil lawsuit under § 4112.14(B). Third, under Ohio Rev. Code § 4112.05(B)(1), employees may enforce their rights by filing with the Ohio Civil Rights Commission a charge alleging that their employer has engaged in an unlawful discriminatory practice.

■ The Ohio Revised Code explicitly makes these first three remedies mutually exclusive: an employee may enforce her rights using one and only one of the three available avenues. Ohio Rev.Code Ann. §§ 4112.02(N), 4112.08, 4112.14(B). Specifically, an employee who files a charge with the OCRC "with respect to the unlawful discriminatory practices complained of[ ] is barred from instituting a civil action under § 4112.14 or division (N) of section 4112.02 of the Revised Code." Ohio Rev. Code Ann. § 4112.08. One exception to the requirement that an employee make an election of remedies is that an employee will not be barred from bringing a civil lawsuit after filing with the OCRC if the employee expressly indicates in the OCRC charge that the filing is being made for the purpose of perfecting an ADEA claim and that the employee does not seek an investigation by the OCRC. *See Talbott v. Anthem Blue Cross & Blue Shield,* 147 F.Supp.2d 860, 862 n. 3 (citing to *Borowski v. State Chem. Mfg. Co.,* 97 Ohio App.3d

635, 642–43, 647 N.E.2d 230 (Ohio App.[8] Dist.1994).)

The fourth possible avenue for victims of age discrimination is a civil lawsuit brought under Ohio Rev.Code § 4112.99, which states that "whoever violates [chapter 4112 of the Code] is subject to a civil action for damages, injunctive relief, or any other appropriate relief." The Ohio Supreme Court has stated that "[a] plain reading of [§ 4112.99] yields the unmistakable conclusion that a civil action is available to remedy any form of discrimination identified in R.C. Chapter 4112." *Elek v. Huntington National Bank,* 60 Ohio St.3d 135, 573 N.E.2d 1056 (1991) (holding that an employee could bring a civil lawsuit under § 4112.99 on the grounds of handicap discrimination, despite the fact that no other provision in Chapter 4112 provides employees the right to bring handicap discrimination claims in court).

Ohio Rev.Code § 4112.08 does not explicitly include § 4112.99 in the list of provisions under which employees may not bring civil lawsuits after filing a charge with the OCRC. Several federal district courts and Ohio appellate courts have nevertheless considered the question of whether the election of remedies scheme for age discrimination in Chapter 4112 extends to § 4112.99. The Ohio Supreme Court has not expressly ruled on the question, but has addressed it in dicta.

 This Court normally applies the law of Ohio "in accordance with the then controlling decision of the highest state court." *United States v. Anderson County, Tennessee,* 761 F.2d 1169, 1173 (6th Cir.1985); *see also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Where the Ohio Supreme Court has not ruled, this Court must ascertain from all the available data, including relevant dicta in related cases, Ohio Supreme Court rulings in analogous cases, and the rulings of Ohio appellate courts, how the Ohio Supreme Court would decide the issue. *Bailey v. V. & O Press Co.,* 770 F.2d 601, 604 (6th Cir.1985). "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1485 (6th Cir. 1989).

The general consensus of Ohio appellate courts is that the election of remedies scheme for age discrimination claims in Ohio applies to claims brought under Ohio Rev.Code § 4112.99. For example, in *Balent v. National Revenue Corp.,* 93 Ohio App.3d 419, 638 N.E.2d 1064 (Ohio App.[10] Dist.1994), the Ohio Court of Appeals held that § 4112.08 barred an employee who had filed a charge with the OCRC from filing a civil lawsuit under § 4112.99, in part because the *Balent* court believed:

> [T]hat the carefully constructed requirements of election of remedy set forth, in some detail, in R.C. 4112.17 [now, Ohio Rev.Code § 4112.14] and 4112.02(N), and reiterated in R.C. 4112.08, can only be taken to express the legislature's unambiguous intention to require an election of a single administrative or statutory remedy when bringing a claim for age discrimination.

*Balent,* 93 Ohio App.3d. at 423–24, 638 N.E.2d at 1067.

The *Balent* court also based its holding in part on the reasoning of the United States District Court for the Northern District of Ohio in *Pozzobon v. Parts for Plastics, Inc.,* 770 F.Supp. 376 (N.D.Ohio 1991). The *Pozzobon* court reasoned that a provision found in Ohio Rev.Code § 4112.08, which at the time provided that " '[n]othing contained in section 4112.01 to

4112.08 and 4112.99 of the Revised Code, shall be deemed to repeal any of the provisions of any law of this state relating to discrimination because of ... age ....' " means that the addition in 1987 of § 4112.99 in its present form does not "alter the detailed, comprehensive legislative scheme created for age discrimination suits." *Pozzobon*, 770 F.Supp. at 378 (quoting Ohio Rev.Code § 4112.08 (Anderson 1991)). The Court finds that the 1992 amendment to § 4112.08 which replaced the words "section 4112.01 to 4112.08 and 4112.99" with "this chapter" is of no consequence and does not affect the reasoning in *Pozzobon.*

Several other Ohio appellate courts agree with *Balent* and *Pozzobon* that Chapter 4112's election of remedies scheme for age claims applies to § 4112.99. *See, e.g., Vinson v. Diamond Triumph Auto Glass,* 149 Ohio App.3d 605, 609, 778 N.E.2d 149, 151 (Ohio App.[2] Dist.2002); *Borowski v. State Chemical Manufacturing Co.,* 97 Ohio App.3d, 635, 642, 647 N.E.2d 230, 235 (Ohio App.[8] Dist.1994); *Schwartz v. Comcorp., Inc.,* 91 Ohio App.3d 639, 647, 633 N.E.2d 551, 557 (Ohio App.[8] Dist.1993); *Giambrone v. Spalding & Evenflo Co.,* 79 Ohio App.3d 308, 312, 607 N.E.2d 106, 109 (Ohio App.[2] Dist.1992) ("[T]he special provision of R.C. 4112.02(N) prevails over the general relief afforded by R.C. 4112.99, and Giambrone must elect between the two remedies."); *accord Talbott v. Anthem Blue Cross & Blue Shield,* 147 F.Supp.2d 860, 862–64 (S.D.Ohio 2001); *Woods v. Vermilion Local School District,* No. 3:98cv7462, 1999 WL 652019 at *4, 1999 U.S. Dist. LEXIS 13249, at *13–14 (N.D.Ohio Aug. 9, 1999).

Finally, in a case considering whether employees alleging handicap discrimination who had filed a charge with the OCRC were barred from instituting suit under § 4112.99, the Ohio Supreme Court reasoned that no election of remedies applied to a handicap discrimination suit under § 4112.99 because, in contrast to the age discrimination area, there was no election of remedies scheme for handicap discrimination. *Smith v. Friendship Village of Dublin, Ohio, Inc.,* 92 Ohio St.3d 503, 506, 751 N.E.2d 1010, 1013–1014 (2001). The *Smith* court explained:

In determining the General Assembly's intent, the starting point in the construction of a legislative enactment is the text of the statute itself. The plain language of neither R.C. 4112.05 nor R.C. 4112.99 requires a plaintiff alleging handicap discrimination to elect between remedies. Nor are there other statutory provisions requiring such an election. In contrast, there are statutory provisions requiring an election for age discrimination claims.

R.C. 4112.02(N) provides that "[a]n aggrieved individual may enforce the individual's rights relative to discrimination on the basis of age ... by instituting a civil action." An individual may also file an age discrimination charge with the commission pursuant to R.C. 4112.05(B)(1). However, the General Assembly has specifically provided that individuals alleging age discrimination must choose between an administrative or judicial action. R.C. 4112.08 states that "any person filing a charge under division (B)(1) of section 4112.05 of the Revised Code, with respect to the unlawful discriminatory practices complained of, is barred from instituting a civil action under section 4112.14 or division (N) of section 4112.02 of the Revised Code."

*These provisions relating to age discrimination demonstrate that the General Assembly was aware that individuals might attempt to commence both administrative and judicial proceedings pursuant to R.C. Chapter 4112. So, in clear language, the General Assembly*

*expressed its intent that an election must be made.* However, in regard to handicap discrimination claims, the General Assembly has not manifested a similar intent requiring a plaintiff to elect between an administrative or judicial remedy. Thus, had the General Assembly intended that individuals alleging handicap discrimination be forced to choose between an administrative or civil proceeding, it would have specifically stated so, as it did with respect to age discrimination.... *The General Assembly has specifically limited an individual's ability to bring both an administrative and civil proceeding in the context of age discrimination only.* Its exclusion of other forms of discrimination from this limitation makes clear that it intended that both remedies be available for other forms of discrimination.

*Smith,* 92 Ohio St.3d at 506, 751 N.E.2d at 1013–1014 (emphasis added).

 After full consideration of the Ohio appellate precedent on point and the relevant dicta from the Ohio Supreme Court, the Court is persuaded that were the issue before the Ohio Supreme Court, that court would find § 4112.99 age discrimination claims subject to Chapter 4112's election of remedies scheme. A plaintiff who first files an age discrimination charge with the OCRC therefore may not bring a civil lawsuit under any provision of Ohio Revised Code Chapter 4112.

 In the case *sub judice,* Plaintiff filed a charge with the OCRC on May 13, 2002. Plaintiff did not indicate in the charge that she was filing only to perfect an ADEA claim. Plaintiff's complaint was filed on October 7, 2003. Therefore, whether Plaintiff's Ohio age claims are brought under §§ 4112.02(N), § 4112.14, or § 4112.99, they are barred by Chapter 4112's age discrimination election of remedies scheme.

The Court is aware that in *Sterry v. Safe Auto Insurance Co.,* No. C2–02–1271, 2003 WL 23412974, 2003 U.S. Dist. LEXIS 17363 (S.D.Ohio 2003), the United States District Court for the Southern District of Ohio faced the same dilemma now before this Court and reached a different conclusion. The *Sterry* court held that even after filing a charge with the OCRC under Ohio Rev.Code § 4112.05, an employee may still bring a civil lawsuit under Ohio Rev.Code § 4112.99 based on a violation of § 4112.02(A), but not based on a violation of § 4112.14(A). *Sterry,* 2003 WL 23412974 at *12–13, 2003 U.S. Dust. LEXIS 17363, at *38–40. The *Sterry* court reasoned that because the election of remedies provision in § 4112.08 bars suits under § 4112.14 as a whole, an employee could not premise a § 4112.99 claim on a violation of § 4112.14(A) after filing with the OCRC. *Id.* 2003 WL 23412974 at 12–13, at 38–39. However, the court reasoned, because the election of remedies provision of § 4112.08 expressly bars only suits under subsection (N) of § 4112.02, and says nothing of § 4112.02(A), suits premised on a violation of the latter subsection may be brought under § 4112.99. *Id.* 2003 WL 23412974 at 13, at 39–40. Despite its acknowledgment that its holding renders Chapter 4112's age discrimination election of remedies scheme "toothless," the *Sterry* court believed the independent nature of the § 4112.99 cause of action and the section's plain language demonstrated a legislative intent to exempt § 4112.99 from the scheme. This Court finds *Pozzobon* and *Balent* more persuasive.

The Court additionally notes that under *Sterry,* claims brought under § 4112.99 but premised on § 4112.02(A)—the only avenue *Sterry* would leave open for employees who have filed with the OCRC—would still be subject to § 4112.02(N)'s one-hundred-eighty-day statute of limita-

tions. *See Bellian v. Bicron,* 69 Ohio St.3d 517, 519–20, 634 N.E.2d 608, 610 (1994) (holding, at a time when § 4112.02 was the only portion of Chapter 4112 addressing age discrimination, that age discrimination claims brought under § 4112.99 but premised on a violation of § 4112.02(A) were subject to § 4112.02(N)'s statute of limitation); *Cosgrove v. Williamsburg of Cincinnati Management Co.,* 70 Ohio St.3d 281, 290–92, 638 N.E.2d 991, 997–99 (1994) (Resnick, J., concurring) (explaining that though causes of action brought under § 4112.99 and premised on provisions of Chapter 4112 which have no other applicable statute of limitations are subject to a six-year limitations period, the rule of *Bellian* still applies to provisions such as § 4112.02(A)). *Bellian's* holding was premised on the rule in Ohio Rev.Code § 1.51 that the more specific statute, i.e., § 4112.02, must prevail over the more general, i.e., § 4112.99. *Bellian,* 69 Ohio St.3d at 519, 634 N.E.2d at 610. The subsequent addition to Chapter 4112 of § 4112.14, to which a six-year statute of limitations applies, *Ferraro v. B.F. Goodrich Co.,* 149 Ohio App.3d 301, 311, 777 N.E.2d 282, 290–91 (Ohio App.[9] Dist. 2002), does not require a different result where, as *Sterry* would have it, the § 4112.99 civil action must be predicated on a violation of § 4112.02(A).

Plaintiff filed her civil action more than one hundred and eighty days after filing her charge with the OCRC. Therefore, even under *Sterry,* Defendants would be entitled to summary judgment on Plaintiff's Ohio age discrimination claims.

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment is granted as to Plaintiff's Ohio state law age discrimination claims.

### E. PROMISSORY ESTOPPEL CLAIM

The parties disagree about whether Plaintiff has brought a claim based on promissory estoppel. Defendants have not moved for summary judgment as to any promissory estoppel claim. In her response to Defendants' motion for summary judgment, Plaintiff mentions a claim premised on promissory estoppel that is allegedly pled in paragraphs twenty-three through twenty-five of her complaint and supported in part by Lois Hicks's alleged statement that Hillside only terminated employees for cause. In their reply, Defendants contend that Plaintiff failed to plead promissory estoppel in her complaint and may not "invent" a new claim at the summary judgment stage. Defendants urge the Court to disregard Plaintiff's promissory estoppel claim entirely.

■■■ The Ohio Supreme Court recognizes an exception to the employment-at-will doctrine where representations or promises made to the employee give rise to promissory estoppel. *Wright v. Honda of America Mfg., Inc.,* 73 Ohio St.3d 571, 574, 653 N.E.2d 381, 384 (1995).

> [T]he doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
>
> The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

*Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 105, 483 N.E.2d 150 (1985)

On the most liberal of constructions, the Court concludes one could discern a promissory estoppel claim in Plaintiff's complaint. As stated below, the Court

therefore will grant additional time for discovery on the issue of promissory estoppel based on the employee handbook and other representations, and the custom and practice in accordance therewith. The Court will grant defendant leave to file a motion for summary judgment on that issue at the conclusion of discovery.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (Doc. No. 25) is granted as to Plaintiff's breach of contract, breach of implied contract, and Ohio state law age discrimination claims, and is denied as to Plaintiff's "regarded as disabled" claims. Plaintiff and Defendants are granted ninety (90) days to supplement discovery regarding Plaintiff's claim of promissory estoppel. Defendants shall then have three (3) weeks to file a motion for summary judgment as to that claim. Plaintiff shall have three (3) weeks to respond; Defendants ten (10) days to reply.

IT IS SO ORDERED.